[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11624

_____

D. C. Docket No. 03-00163-CV-SLB-S

DWIGHT D. MYRICKS,

Plaintiff-Appellant,

versus

FEDERAL RESERVE BANK OF ATLANTA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 7, 2007)**

Before CARNES, PRYOR and FARRIS,* Circuit Judges.

PRYOR, Circuit Judge:

_____

*Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

The main issue in this appeal is whether there is a genuine issue of material fact that Dwight Myricks voluntarily and knowingly waived his pending claim of employment discrimination against the Federal Reserve Bank of Atlanta when he signed a severance agreement and general release to receive enhanced retirement benefits. Myricks is educated, was represented by an attorney, and had been given 60 days to consider the severance agreement, and the Bank had explained to Myricks's attorney that the severance agreement would release Myricks's pending claim. Myricks had attempted unsuccessfully to negotiate a more generous settlement before he executed the severance agreement on the deadline provided by the Bank. The district court granted summary judgment for the Bank. Based on our review of the totality of the circumstances regarding Myricks's knowing and voluntary execution of the release, we affirm.

## I. BACKGROUND

After filing a charge with the EEOC, Myricks, an African-American employee in the check-processing department of the Birmingham branch of the Bank, filed a complaint against the Bank under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. On June 11, 2003, the Bank filed a motion for summary judgment, which the district court granted. Myricks appealed, and a

2

panel of this Court reversed. See Myricks v. Fed. Reserve Bank of Atlanta, No. 04-12246 (11th Cir. Mar. 7, 2005). While this first appeal was pending, the Bank decided to close permanently its check-processing operations in Birmingham and eliminate approximately 200 jobs.

The Bank offered Myricks and other similarly situated employees a choice between two severance packages. The Bank offered to provide one year of salary and enhanced retirement benefits through an agreement with a government pension board if the employee agreed to release all legal claims arising from his employment. Terminated employees who refused to sign the release were provided two weeks of salary.

The Bank sent a draft of the release and a letter explaining the two options to Myricks's attorney approximately 60 days before the March 31 deadline set by the pension board for making the election. In this letter, the Bank referenced Myricks's pending complaint and explained, as follows, that the release was intended to settle the current case against the Bank:

> Dwight Myricks . . . will receive a notice that his job is being eliminated by March 31, 2005. He will be offered a severance package that requires the release of all claims that he has against the Bank, which would include but not be limited to the claims in the current case against the Bank, as well as the EEOC charges he has filed.

On March 24, 2005, the Bank wrote another letter to Myricks's attorney to

3

confirm that Myricks was eligible for enhanced retirement benefits and to explain that the enhanced benefits were available only if Myricks executed the severance agreement and release:

> As stated in the letters to you and Mr. Myricks, the Bank applied to the Committee on Plan Administration (CPA) for up to four additional years of service credit for Mr. Myricks as of his termination date to bring him to [a heightened retirement level]. The CPA recently approved this request . . . .
>
> I want to make sure there is no misunderstanding about this. If Mr. Myricks does not sign the severance agreement and release, he will not only lose the lump sum amount of $38,420.00 and health insurance at employee rates for six months, but he will also forever lose the opportunity to retire with 80 points. The enhanced severance benefits—and therefore, the rule of 80—cannot and will not be available after March 31.

Myricks's attorney responded to the letter from the Bank with a counteroffer: $111,580 in addition to the severance arrangement. The letter referenced the severance package and suggested that the parties resolve their differences before the deadline of March 31, 2005:

> I [am willing] to work in good faith as diligently as I c[an] over the next few days to resolve all of Mr. Myricks' claims against the Bank (including the claims contained in the current litigation and the recent EEOC charge) and the firm's claims for attorneys fees and expenses. Since you have conveyed the Bank's position that it cannot extend the offer to award additional service credits beyond March 31, 2005, I think it is incumbent upon everyone to make sure that we explore all sensible routes of resolution prior to the March 31, 2005 deadline.

On March 31, 2005, the Bank responded to Myricks's counteroffer with an

4

offer of $6,600, in addition to the severance arrangement. The counteroffer required Myricks to sign the severance agreement and general release, but it contained additional conditions. The counteroffer also required Myricks to agree to dismiss voluntarily his pending claim with prejudice, give written notice if asked to testify about the Bank within two years of the agreement, not to criticize or disparage the Bank or its employees, agree not to sue the Bank in the future, keep the agreement confidential, and not to apply for future employment with the Bank. Myricks rejected that offer.

On March 31, the deadline to sign the severance agreement and general release, Myricks's attorney sent a final email to the attorney for the Bank. Myricks's attorney stated that Myricks intended to sign the severance agreement, but liability for attorney's fees remained in dispute:

> Mr. Myricks has decided not to accept the Bank's final settlement proposal. I understand that he intends . . . to sign the severance agreement. We'll have to figure out where this leaves us. This firm takes the position that Mr. Myricks cannot waive or release the firm's entitlement to any fees or expense recoupment associated with the litigation.

Later that day, Myricks signed the severance agreement and general release. Myricks did not alter the document, and when a human resources officer asked if he had any questions, Myricks said that he did not. The document included the following general release:

5

In exchange for the Consideration, I on my behalf and that of my heirs, executors, administrators, successors and assigns, do release and forever discharge the Bank, the Bank's Retirement Plan, the related Retirement Trust, the Federal Reserve System Committee on Employee Benefits, the Federal Reserve System Committee on Plan Administration, and any member or agent of the foregoing (collectively referred to herein as "released Entities") from all actions, claims, and demands of any kind for which I have or might have claimed the Bank to be liable through the date of this agreement. This release includes, but is not limited to, all federal, state, and local statutory and common laws, including specifically the Civil Rights Acts of 1866, 1871, 1964 and 1991, the Age Discrimination in Employment Act of 1967, the Worker Adjustment and Retraining Notification Act, and any rights to grieve the Bank's actions as provided in the Bank's Personnel Manual.

The Bank moved for summary judgment in the district court based on the release. Myricks responded that the exchange of letters and emails, including the offer of the Bank to settle Myricks's pending claim for separate consideration, proved that the parties did not intend the release to include the pending claims. Myricks explained that, when he signed the release, "it was [his] only intention to accept the severance package . . . with the understanding that any settlement of the claims in [the] pending lawsuit would be separate . . . as [his] attorney and the bank's attorney had been discussing." Myricks also moved for discovery of the terms of the severance agreements that other employees signed with the Bank and the terms for which the Bank settled a lawsuit filed by another employee. In the alternative, Myricks argued that, if the court construed the release to apply to his

pending claim, then he was a prevailing party entitled to statutory attorney's fees.

The district court granted summary judgment for the Bank with costs taxed against Myricks. The district court concluded that there was no latent or patent ambiguity in the release and Myricks "knowingly and voluntarily" settled his complaint for valuable consideration. The district court also ruled that, because he was not a "prevailing party," Myricks did not have a statutory right to attorney's fees. The district court denied Myricks's discovery motion without explanation.

## II. STANDARDS OF REVIEW

Two standards of review are applicable to this appeal. First, we review de novo both a grant of summary judgment and whether a party "prevail[ed]" under Rule 54 of the Federal Rules of Civil Procedure. Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1325 (11th Cir. 2001); Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1012 (11th Cir. 2001). Second, we review a denial of discovery under Rule 56(f) of the Federal Rules of Civil Procedure for abuse of discretion. Jackson v. Cintas Corp., 425 F.3d 1313, 1316 (11th Cir. 2005).

## III. DISCUSSION

Myricks presents three arguments in this appeal. First, Myricks argues that there is a genuine issue of material fact about whether he knowingly and

7

voluntarily released his pending Title VII claim, and he seeks to discover the severance packages of other employees to support his argument. Second, Myricks argues that the severance agreement was latently ambiguous under Alabama law. Third, Myricks argues that we should reverse the award of costs to the Bank. We address each argument in turn.

A. *Myricks Knowingly and Voluntarily Released His Pending Title VII Claim.*

To release a cause of action under Title VII, "the employee's consent to the settlement [must be] voluntary and knowing" based on the totality of the circumstances. Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15, 94 S. Ct. 1011, 1022 n.15 (1974). Our review of the totality of the circumstances surrounding the signing of a release involves several objective factors:

> the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

Puentes v. United Parcel Serv. Inc., 86 F.3d 196, 198 (11th Cir. 1996) (quoting Beadle v. City of Tampa, 42 F.3d 633, 635 (11th Cir. 1995)). These factors provide "objective evidence tending to support [or undermine the employee's] claim that he was subjectively unaware that he was waiving important statutory

rights." Pierce v. Atchison Topeka & Santa Fe Ry., 110 F.3d 431, 442 (7th Cir. 1997).

Myricks concedes that five of the six objective factors that we described in Beadle favor the argument of the Bank that Myricks knowingly and voluntarily released his claim. Myricks is educated, had ample time to consider the severance agreement, and consulted an attorney. The Bank also encouraged Myricks's consultation with his attorney and corresponded with the attorney about the severance agreement. The severance agreement provided clear terms about the scope of the release, and those clear terms were explained in writing to Myricks's attorney.

Myricks's argument concerns the last of the Beadle factors, that is, the consideration given in exchange for the release when compared with the benefits to which he was already entitled. Myricks argues that his subjective intent and the evidence of his negotiations with the Bank create a genuine issue of material fact about whether his release was knowing and voluntary. Myricks argues that, because he and the Bank were negotiating a more generous settlement package, it is reasonable to infer that he failed to understand that his execution of a severance agreement available to all employees would compromise his pending complaint.

The error of Myricks's argument is that the Bank explained in clear terms

9

that the severance agreement required the execution of a general release, and Myricks had an opportunity to consult his attorney about those terms. A genuine issue of fact may exist when an employee has not been given enough time to review the agreement after being terminated, see, e.g., Puentes, 86 F.3d at 198-99, is not educated enough to understand the waiver, see, e.g., Torrez v. Pub. Serv. Co. of N.M., 908 F.2d 687, 689-90 (10th Cir. 1990), or is misled to believe that the release was necessary to prevent the employer from taking an unlawful action, see, e.g., Coventry v. U.S. Steel Corp., 856 F.2d 514, 524-25 (3d Cir. 1988), but an educated employee with ample time to consider an agreement cannot profess ignorance about its clear terms after consulting an attorney, see O'Hare v. Global Natural Res., Inc., 898 F.2d 1015, 1017-18 (5th Cir. 1990) (affirming summary judgment when "appellant had the experience and the training to understand . . . [the] document; he received a copy of the agreement long prior to signing it; he consulted with three attorneys; and he received consideration for the release"); Pilon v. Univ. of Minn., 710 F.2d 466, 468 (8th Cir. 1983) (affirming summary judgment when attorney for educated plaintiff negotiated clear agreement). Myricks had enough time to consider the clear terms of the release, was educated, was not threatened with any unlawful action, and consulted an attorney.

The Seventh Circuit has held, and we agree, that an employee's decision to

consult an attorney before signing a clear release creates a presumption that the release is enforceable. In Riley v. American Family Mutual Insurance Co., the court stated that "a plaintiff who executes a release within the context of a settlement pursuant to the advice of independent counsel is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress." 881 F.2d 368, 373 (7th Cir. 1989). The court reasoned that the alternative is untenable: "Any other principle would enable plaintiffs to avoid their obligations entered into on the advice of their attorneys by claiming they did not believe they were releasing their rights, despite the clear language of the waivers." Id. at 373–74. The Riley court also explained that, in this circumstance, the employee may have an alternative remedy available: "[T]hat plaintiff's counsel may have inaccurately conveyed the effect of the release . . . may be remedied through a malpractice action, but not through judicial interpretation of plaintiff's subjective intent." Id. at 374.

The presumption recognized by the Seventh Circuit is consistent with our case law. In Hayes v. National Service Industries, we held that evidence of an employee's consent is unnecessary when an attorney with apparent authority under state law signs a settlement agreement on the employee's behalf. 196 F.3d 1252, 1254 (11th Cir. 1999). Similarly, in Freeman v. Motor Convoy, Inc., we affirmed

11

summary judgment for an employer when an employee signed a release after being advised to do so by a representative of the EEOC. 700 F.2d 1339, 1352 (11th Cir. 1983).

The presumption described in Riley does not apply when the terms of the release, unlike the agreement signed by Myricks, are unclear. We have determined, for example, that an issue of fact existed about whether an employee knowingly and voluntarily released a claim after consulting an attorney when the terms of his release were ambiguous. In Bledsoe v. Palm Beach County, we held that a general release negotiated to end a worker's compensation lawsuit against one unit of the county government did not clearly apply to a new lawsuit under the Americans with Disabilities Act against a separate unit of the county government. 133 F.3d 816, 820–21 (11th Cir. 1998). In contrast with Bledsoe, the release that Myricks signed clearly applies to all claims against the Bank, including pending claims of discrimination under the Civil Rights Acts.

Myricks contends that he thought that the severance agreement and release would not affect his pending claims because of his "separate" settlement negotiations, but "claims of subjective misunderstanding, standing alone [do not] defeat an otherwise valid release." Pierce, 110 F.3d at 442. If anything, the negotiations were at an end; before executing the documents, Myricks rejected the

12

counteroffer of the Bank. Evidence that the parties negotiated the conditions and consideration of a release supports a conclusion that the release, when executed later, was knowing and voluntary. See Puentes, 86 F.3d at 199; Bormann v. AT&T Commc'ns, Inc., 875 F.2d 399, 403 (2d Cir. 1989); Coventry, 856 F.2d at 524. Myricks's decision to reject the $6,600 counteroffer of the Bank may have been motivated by a hope to recover attorney's fees, a reluctance to agree to the additional terms required by the Bank, or his attorney's advice, but the totality of the circumstances establishes that his later decision to sign the release was knowing and voluntary.

Myricks's argument that the signing deadline put him under economic duress does not overcome the presumption described in Riley. "Mere hard bargaining positions . . . and the press of financial circumstances . . . will not be deemed duress." Chouinard v. Chouinard, 568 F.2d 430, 434 (5th Cir. 1978) (citation omitted). "Although [Myricks] certainly faced economic pressure in the sense that he was offered an economic incentive to release any claims he might have, it was neither of the degree nor kind of pressure affecting the voluntariness of the waiver." Cirillo v. Arco Chem. Co., 862 F.2d 448, 452 n.2 (3d Cir.1988).

Myricks also erroneously argues that, with further discovery, he could have established that his release was not knowing and voluntary because he was not

13

compensated more than employees who had no pending claims against the Bank. We have held that employers have no obligation to vary the compensation offered for a release based on the potential strength of an employee's claim. In Griffin v. Kraft Foods, Inc., we ruled that older employees who were covered by the Age Discrimination in Employment Act did not necessarily have "more valuable" claims than younger employees not covered by the Act. 62 F.3d 368, 374 (11th Cir. 1995). The severance amounts given other employees have no bearing on whether Myricks knowingly and voluntarily waived his pending claim. The district court did not abuse its discretion when it denied Myricks's efforts to obtain irrelevant discovery about the severance agreements with other employees.

Reading the record in the light most favorable to Myricks, there is no genuine issue that he knowingly and voluntarily released his pending Title VII claim. The Bank advised Myricks's attorney that the clear terms of the release covered Myricks's pending claims. Myricks was educated and given ample time to consider the agreement, and he consulted his attorney before signing it. Based on the totality of the circumstances, the district court did not err.

*B. The Severance Agreement Is Not Ambiguous Under Alabama Law.*

Myricks argues that the severance agreement is latently ambiguous under Alabama law, but we disagree. "An ambiguity is latent when the language

14

employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." Thomas v. Principal Fin. Group, 566 So. 2d 735, 739 (Ala. 1990). There is no extrinsic evidence that creates "a choice among two or more possible meanings" of the severance agreement.

### C. *Myricks Was Properly Taxed with the Costs of the Bank.*

Myricks argues that he does not owe the Bank litigation costs because the Bank is not the prevailing party, but again we disagree. Federal Rule of Civil Procedure 54(d) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d)." Fireman's Fund Ins. Co., 254 F.3d at 1012 (quoting Head v. Medford, 62 F.3d 351, 354 (11th Cir. 1995)); see also 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2667 (3d ed. 1998). Even assuming that a plaintiff who wins a settlement is a prevailing party, there is a difference between an action that is dismissed voluntarily and an action in which a settlement agreement must be enforced by court order. Release is an affirmative defense. Fed. R. Civ. P. 8(c). The Bank prevailed on that defense and is the prevailing party.

15

## IV. CONCLUSION

The summary judgment in favor of the Bank is **AFFIRMED**.