[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 31, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14364
Non-Argument Calendar
_____

D. C. Docket No. 05-00993-CV-TWT-1

WILLIAM VINNETT,

Plaintiff-Appellant,

versus

GENERAL ELECTRIC COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 31, 2008)**

Before ANDERSON, CARNES and HULL, Circuit Judges.

PER CURIAM:

William Vinnett appeals from the district court's grant of summary judgment in favor of General Electric Co. in his employment discrimination and retaliation suit filed pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 3; and 42 U.S.C. § 1981.

## I.

Vinnett, who is fifty-two years old and originally from Chile, began working as a product services engineer for GE's Power Systems Division in Atlanta in October 1999. Under GE's performance assessment system, there were three ratings an employee could receive. The highest rating was "top talent," the middle rating was "highly valued," and the lowest rating was "least effective performer." In 2001, Vinnett's manager at the time, Mark Hammont, rated Vinnett highly valued, but in 2002, Hammont rated him as a least effective performer. As a result of the least effective performer rating, Vinnett was placed on a performance improvement plan, and he was ineligible for a raise or a promotion in 2003. Vinnett objected to the rating as undeserved because he believed there was no area of his performance that needed improvement.

In September 2003, Vinnett filed a complaint through GE's internal dispute resolution process, alleging that he was being discriminated against on the basis of

his age, national origin, or race. Vinnett specifically complained about the 2002 least effective performer rating, not getting a raise in 2003, and not being considered for a promotion. In October 2003, Vinnett's new manager, Jason Ruyle, responded to his complaint, finding it to be without merit.

Vinnett then filed a "level two" submission form through GE's dispute resolution process, repeating the same allegations contained in his first complaint. By this time, Vinnett had retained an attorney to assist him. In December 2003, GE's engineering general manager and human resources manager reviewed Vinnett's level two complaint, and both concluded that his accusations were without merit. Vinnett then submitted a "level three" complaint through GE's dispute resolution process, which resulted in the matter being submitted to the American Arbitration Association for mediation. Vinnett's attorney helped him fill out the mediation form and attended the day-long mediation with him in May 2004.

In June 2004, Vinnett decided that he no longer wanted to work at GE and began seeking other employment. Later that month, Vinnett accepted an offer of employment in Orlando, Florida with Mitsubishi Power Systems, and he began working for Mitsubishi in July 2004. Meanwhile, Vinnett and his attorney worked out a settlement agreement with GE. In consideration for Vinnett's release and

settlement of all employment-related claims against GE, the agreement required GE to: (1) pay $40,000 to Vinnett and $10,000 to his attorney; (2) provide Vinnett a signed reference letter; (3) keep Vinnett on the payroll until July 9, 2004; (4) provide only positive references and make positive comments about Vinnett's employment; and (5) continue to use Vinnett's wife, Leena, as a contractor for GE Power Systems for six months, although she could be terminated for cause, which included GE's "discontinuation of Leena Vinnett's services as the result of purchasing services through a company different from the one which currently employs Ms. Vinnett."

Vinnett met with his attorney on July 1, 2004 to review the settlement agreement. He testified in his deposition that he discussed the terms of the agreement with his lawyer and read the document several times. When his attorney asked if he understood the agreement, he said he did and that the document was "straightforward." Vinnett and his attorney signed the release and agreement that day. The next day, an attorney for GE signed the agreement on the company's behalf.

At the time the settlement agreement was prepared, Leena worked for a company called Granite Services as a software developer. Pursuant to Granite's contract with GE Power Systems, Leena had provided network administration,

4

software configuration, and other IT services to GE since January 2000. Granite's contract with GE was subject to renewal on an annual basis, and it had almost always been renewed before 2004. In early 2004, the contract was again up for renewal under a competitive bid process. Granite notified Leena that if it lost the contract, her assignment would be lost, and that there was no other position to which she could automatically be transferred. Accordingly, Granite told Leena that she should submit an updated resume and check the company's website for other possible job opportunities.

At the end of the bid process, Granite lost the GE contract to another vendor, Softek. Leena learned of this in May 2004, and later that month, she accepted an assignment to Granite's temporary transition team, which was created to ensure an orderly transition to GE's new vendor. The agreement Leena signed with Granite specified that her employment was for "no fixed period," and in early July 2004, Granite notified Leena that her assignment would likely terminate at the end of August.

Leena told her husband that her assignment was going to end, but she did not notify anyone at Granite about the provision in her husband's settlement agreement with GE relating to her employment because she "thought they might change their mind . . . at [the] last minute." She decided to wait until the end of August to see if

5

Granite would continue her assignment.

On August 27, 2004, when nothing had changed and her assignment was about to end, Leena notified her supervisor at Granite for the first time that there was a settlement agreement between her husband and GE that affected her employment status. Her supervisor knew nothing about the agreement and decided to speak to Granite's vice president for human resources, who also was unaware of any agreement but said he would look into it. Leena's assignment terminated on August 31, 2004. The next day, Leena's supervisor sent her a letter stating that Granite had been advised that the termination of her assignment did not conflict with any agreement between GE and her husband.

On December 20, 2004, Vinnett filed and submitted an EEOC charge, alleging retaliation and requesting "the settlement agreement to be restored and [his] spouse to get a permanent position with General Electric Company." In January 2005, the EEOC determined that its investigation did not establish any "violations of the statutes." Vinnett filed suit against GE in federal court in April 2005, alleging age discrimination, as well as retaliation. Specifically, Vinnett alleged that he was discriminated and retaliated against while he was employed at GE, and that GE retaliated against him after he left the company by causing his wife's employment to be terminated, in violation of the settlement agreement.

6

After the completion of discovery, GE moved for summary judgment on all of Vinnett's claims, which the district court granted. The district court found that Vinnett had released all claims of discrimination and retaliation that occurred before he signed the settlement agreement. The court further concluded that Vinnett had no viable claim relating to Leena's loss of employment because he had suffered no "adverse action," and there was no evidence of a causal connection between Leena's loss of employment and Vinnett's discrimination complaints. Vinnett timely appealed.

## II.

Vinnett contends that the district court erred by granting summary judgment to GE on his retaliation and discrimination claims because: (1) his prior settlement agreement with GE does not bar his discrimination and retaliation claims that arose during his employment; and (2) he established a prima facie case of retaliation for acts that occurred after the signing of the settlement agreement. We review de novo a district court's grant of summary judgment, applying the same legal standard used by the district court. Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1242 (11th Cir. 2001). We draw all factual inferences in a light most favorable to the non-moving party. Id. at 1243.

Summary judgment is appropriate where "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Speculation does not create a <u>genuine</u> issue of fact." <u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005) (quotation omitted). We have stated that "the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Johnson</u>, 263 F.3d at 1243 (quotations and alteration omitted).

## A.

Vinnett contends that the district court erred by concluding that the settlement agreement barred his retaliation and discrimination claims arising during his employment with GE. Specifically, Vinnett argues that the clause in the agreement concerning Leena's employment is ambiguous because each party intended for the clause to mean different things. Vinnett argues that he intended for the clause to guarantee Leena's employment, and according to him, GE breached the agreement when it terminated Leena. In light of the breach, Vinnett argues that rescission of the settlement agreement is appropriate.

We use the applicable state's contract law to construe and enforce settlement agreements. <u>Ins. Concepts, Inc. v. W. Life Ins. Co.</u>, 639 F.2d 1108, 1111–12 (5th

8

Cir. Mar. 1981).[1]  In this case, Vinnett and GE agree that the settlement agreement is governed by Georgia law.  "Under Georgia law, the existence or nonexistence of an ambiguity in an agreement is a question of law to be resolved by the court."  Id. at 1112.  There is ambiguity in a contract if the terms are duplicitous, uncertain, unclear, indistinct, difficult to comprehend, or open to various interpretations. Early v. Kent, 108 S.E.2d 708, 709 (Ga. 1959).  When a contract is unambiguous, it should be enforced according to its terms, Ins. Concepts, Inc., 639 F.2d at 1112, and parol evidence about a party's intent may not be introduced, Early, 108 S.E.2d at 710.  Rescission of a contract based upon a breach may be warranted when the breach is so substantial that it defeats the purpose of the contract.  Mayor & City of Douglasville v. Hildebrand, 333 S.E.2d 674, 676 (Ga. Ct. App. 1985).

An employee may release a cause of action for employment discrimination if, under the totality of the circumstances, the employee's consent to the settlement was knowing and voluntary.  Myricks v. Fed. Reserve Bank of Atlanta, 480 F.3d 1036, 1040 (11th Cir. 2007).  When examining the totality of the circumstances, this Court looks to the following factors:

> [T]he plaintiff's education and business experience; the amount of
> time the plaintiff considered the agreement before signing it; the

---

[1]    In our en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

9

clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

Id. (quotation omitted). "These factors provide objective evidence tending to support or undermine the employee's claim that he was subjectively unaware that he was waiving important statutory rights." Id. (quotation and alteration omitted). Furthermore, we presume that a release is enforceable when the employee consults "an attorney before signing a clear release." Id. at 1041.

Vinnett has failed to point to which term or phrase in the clause of the settlement agreement relating to Leena's employment is ambiguous, and he actually admitted in his deposition that the agreement was "straightforward." The agreement provides that, notwithstanding a six-month guarantee of her employment, Leena may be terminated "for cause," which includes a "a change in business circumstances." A "change in business circumstances" is in turn defined by the agreement as GE's "discontinuation of Leena Vinnett's services as the result of purchasing services through a company different than the one which currently employs Ms. Vinnett." The agreement clearly spelled out the circumstances under which Leena's employment could be terminated, and therefore, it is not ambiguous. Vinnett's argument that his intent is evidence of ambiguity does not

change this result because parol evidence may not be used to determine ambiguity. See Early, 108 S.E.2d at 710.

Furthermore, the undisputed evidence shows that GE did not breach its agreement with Vinnett. Both Vinnett and Leena admitted in their depositions that in 2004, GE decided to purchase the services provided by Leena's employer, Granite, from a different contractor. GE also produced a letter from Granite to Leena that stated that GE no longer required her to assist in the transition to a new contractor. This evidence shows that GE had decided to purchase services through a company other than Granite, and therefore under the plain language of the agreement, cause existed to terminate Leena's employment. Because GE did not breach the agreement, rescission based upon breach is unavailable to Vinnett. See Hildebrand, 333 S.E.2d at 565.

Finally, the evidence shows that the settlement agreement is enforceable because under the totality of the circumstances, Vinnett knowingly and voluntarily entered into it. The undisputed evidence shows that: (1) Vinnett had a college education; (2) he considered the agreement for an hour before signing it; (3) the agreement is unambiguous; (4) Vinnett consulted an attorney before signing the agreement; and (5) he received $50,000, a letter of recommendation, and an assurance of only positive references in exchange for his consent to the agreement.

11

Moreover, Vinnett's consultation with an attorney creates a presumption that his consent to the agreement was voluntary, see Myricks, 480 F.3d 1401, and he has failed to produce any evidence indicating otherwise. Vinnett has therefore released all discrimination and retaliation claims arising before the settlement agreement was executed.

Because Vinnett released all of his discrimination and retaliation claims arising before the settlement agreement was executed, his claims of discrimination and retaliation arising during his employment with GE are barred. The district court correctly granted summary judgment to GE on these claims.

B.

Vinnett contends that the district court erred by granting summary judgment to GE on his claim that GE retaliated against him by terminating his wife's employment in August 2004 because, according to him, he made out a prima facie case of retaliation. Retaliation claims are cognizable under both the ADEA and Title VII. 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a). We have also acknowledged retaliation claims under 42 U.S.C. §1981. See Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1411–13 (11th Cir. 1998).

In order to establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered an action from

his employer that a reasonable employee would have found to be materially adverse; and (3) there was some causal relationship between the two events. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, ___, 126 S. Ct. 2405, 2415 (2006); Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997). The Supreme Court has defined a materially adverse action as one that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N., 548 U.S. at ___, 126 S. Ct. at 2415 (quotation omitted).

The plaintiff establishes a causal relationship by proving that the "protected activity and the adverse action are not completely unrelated." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation and alterations omitted). A close temporal proximity between the protected activity and the adverse action may be sufficient circumstantial evidence of a causal connection. Id. However, the court must also examine whether the decisionmaker had notice of the protected activity. Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1207–08 n.10 (11th Cir. 2001). If the decisionmaker lacked notice of the protected activity, there can be no causal connection. Id. at 1207. There is also a lack of a causal connection when an employer makes a decision before the protected activity occurs and then proceeds with that decision. See Clark County Sch. Dist. v.

13

Breeden, 532 U.S. 268, 272, 121 S.Ct. 1508, 1511 (2001) (holding that where an employer contemplated transferring an employee before the employer learned that the employee filed a Title VII suit, the employer's decision to proceed "along lines previously contemplated, though not yet definitively determined" did not establish evidence of causality).

The undisputed evidence shows that there was a lack of a causal relationship between any statutorily protected activity by Vinnett and actions taken by GE after it entered into the settlement agreement. The evidence shows that: (1) GE had decided to replace Granite before the settlement agreement was negotiated and executed; and (2) Granite decided to end its use of Leena's services before it knew about the settlement agreement. Thus, there is a lack of a causal relationship because Granite, the decisionmaker, did not know about the settlement agreement when it decided to terminate Leena and then simply proceeded with that decision. See Breeden, 532 U.S. at 272, 121 S. Ct. at 1511. The district court correctly granted summary judgment to GE on Vinnett's post-agreement retaliation claim.

## III.

Vinnett also contends that the district court abused its discretion when it allowed GE to incorporate its statement of undisputed material facts into its brief in support of its motion for summary judgment, thus extending the page limitation.

14

We review a district court's application of local rules only for an abuse of discretion. Quick v. Peoples Bank of Cullman County, 993 F.2d 793, 798 (11th Cir. 1993). Under the abuse of discretion standard, we must affirm the district court unless we determine that the court made a clear error of judgment or applied an incorrect legal standard. United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004). We give "great deference to a district court's interpretation of its local rules." Clark v. Housing Auth. of Alma, 971 F.2d 723, 727 (11th Cir. 1992).

Under N.D. Ga. L.R. 7.1(D), briefs filed in support of a motion are limited in length to twenty-five pages. The local rules also provide:

> A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.

N.D. Ga. L.R. 56.1(B)(1).

Vinnett's argument is without merit. It is not an abuse of discretion for the district court to allow GE to reference and incorporate its statement of undisputed material facts in its supporting brief when the district court's local rules require GE to file the statement along with its motion for summary judgment. Vinnett's

15

contrary interpretation would only result in the unnecessary repetition of the facts, and his argument appears disingenuous considering that he filed a lengthy response to GE's statement of material facts along with his opposition brief.  Accordingly, we affirm the district court's application of its local rules.

**AFFIRMED.**