[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12696
_____

D.C. Docket No. 6:11-cv-00059-PCF-TBS

BLANCHE PAYLOR,

Plaintiff - Appellant,

versus

HARTFORD FIRE INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 8, 2014)

Before TJOFLAT, COX, and ALARCÓN,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

_____

[*] Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

Blanche Paylor appeals the District Court's grant of summary judgment for her former employer, Hartford Fire Insurance Company ("Hartford"), on her claims of interference and retaliation under the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601, et. seq. ("FMLA").  Although Paylor signed a Severance Agreement with Hartford ostensibly waiving her FMLA claims, she argues that those claims were "prospective" and therefore not waivable under Department of Labor ("DOL") regulations.  See 29 C.F.R. § 825.220(d) (2009).  In the alternative, Paylor argues that her signing of the Severance Agreement was not knowing and voluntary, and that the Severance Agreement is void as contrary to public policy.  Having entertained oral argument, we find no merit in Paylor's arguments and therefore affirm.

## I.

We first describe the events leading up to Paylor's lawsuit and then recount the course of this litigation.

## A.

Hartford sells insurance and investment products.  Hartford employed Paylor in a job the company calls a Long Term Disability Analyst III (or "LTD III Analyst"), the exact duties of which are both "hotly disputed by the parties" and irrelevant for purposes of this appeal.  See Hollinger v. Hartford Fire Insurance Group, No. 6:11-cv-59-Orl-19TBS, ECF Doc. 57, at 9 (S.D. Fla. Dec. 12, 2012).

2

Everyone agrees that, while working at Hartford between January 2008 and September 2009, Paylor requested (and received) 390 hours of FMLA leave. Unfortunately, that is about all the parties agree on. Despite wide-ranging discovery, Paylor and Hartford cannot converge on a precise timeline of events preceding this litigation. What follows is a rough chronology.

Sometime in late August or early September, 2009, Paylor submitted a request for additional FMLA leave. A September 4, 2009, e-mail to Paylor from Hartford apparently acknowledged this request because it included, in attachments, various administrative forms for Paylor to complete as part of her FMLA request. Hartford contends that this e-mail constituted approval of Paylor's leave, pointing to Paylor's deposition testimony that "I was first approved for Family Medical Leave" in a letter (not an e-mail) dated September 4. Paylor now says that she misspoke in her deposition: she claims that the body of the September 4 e-mail was blank, and so could not have communicated FMLA approval, while the September 4 letter similarly communicated only acknowledgment, not approval.

Paylor's last performance review was apparently on September 11, 2009. A document signed on that day by Paylor's supervisor included a performance warning, criticized the quality of her work, and explained what she would have to do to keep her job. Several days later, on September 16, Paylor's supervisors initiated a meeting and gave her a choice: she could accept a one-time offer of 13

3

weeks of severance benefits in exchange for signing a Severance Agreement, under which Paylor waived any claims she might have had under the FMLA, or she could agree to a performance-improvement plan ("PIP"), requiring her to meet various performance benchmarks or face termination.

Paylor signed the Severance Agreement on September 17.  Paylor now says that she only signed the agreement because her stress level had become unmanageable: she had requested FMLA leave in the first place to care for her ailing mother, and between her mother's deteriorating health and the pressures she experienced at work, she "just wanted out."

### B.

Paylor joined two other named plaintiffs in filing a complaint against Hartford for violations of the FMLA, along with other claims not relevant to this appeal.  The complaint alleged, without elaborating, that Hartford interfered with Paylor's FMLA rights and retaliated against her for exercising her rights.  Hartford filed an answer denying the allegations in the complaint and asserting that Paylor's FMLA claim was barred by her execution of the Severance Agreement.

After protracted discovery, Hartford filed a motion for summary judgment, arguing that Paylor waived all FMLA claims when she signed the Severance Agreement.  In particular, Hartford argued that Paylor signed the release

4

knowingly and voluntarily and that Paylor signed the release after the events allegedly giving rise to her FMLA claims.

Paylor argued, in her opposition to Hartford's motion for summary judgment, that she did not waive her FMLA rights by signing the Severance Agreement. Pointing to 29 C.F.R. § 825.220(d), which states that employees cannot waive "prospective" rights under the FMLA, Paylor argued that because she had an outstanding request for FMLA leave at the time she signed the Severance Agreement, she had "prospective" FMLA rights that the Severance Agreement could not lawfully abrogate.

The District Court sided with Hartford, writing "[a]lthough the Eleventh Circuit Court of Appeals has not directly addressed the legality of a release of FMLA claims based on past employer conduct, the [District] Court is confident that such a release would be held enforceable pursuant to Regulation § 825.220(d)." Hollinger, No. 6:11-cv-59-Orl-19TBS, ECF Doc. 57, at 20–21. The District Court reasoned that Paylor's FMLA rights were not "prospective" because the conduct she claimed was unlawful—i.e., presenting her with the choice of a PIP or the Severance Agreement—all happened before she signed the Severance Agreement. The District Court accordingly granted summary judgment for Hartford on Paylor's FMLA claim. This appeal followed.

II.

5

Congress enacted the FMLA to "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1). The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:" (1) "a serious health condition that makes the employee unable to perform the functions of the position of such employee" or (2) "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1). An employee on FMLA leave must be reinstated to the position she held before they took FMLA leave. 29 U.S.C. § 2614(a). The FMLA prohibits employers from retaliating against employees who exercise or attempt to exercise their rights under the FMLA, 29 U.S.C. § 2615(a), and employers who violate the FMLA are subject to damages and equitable relief, 29 U.S.C. § 2617 (a)(1)(A)–(B).

There is no dispute in this case that the FMLA applies to Hartford, that Paylor was an "eligible employee" as defined by the statute, or that Paylor was entitled to FMLA leave at the time she requested it. Nor is the question whether Hartford in fact interfered with or retaliated against Paylor's assertion of her FMLA rights. The question before us concerns only the validity of the Severance Agreement that Paylor signed on September 17, 2009. If the agreement is valid,

then the District Court was correct in concluding that Paylor waived her FMLA claims and that Hartford was entitled to judgment as a matter of law.

Because the District Court disposed of Paylor's FMLA claims on summary judgment, we exercise de novo review. Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1161–62 (11th Cir. 2006). We consider all the evidence in the record, and make all reasonable factual inferences, in the light most favorable to the non-moving party. See Crawford v. Carroll, 529 F.3d 961, 964 (11th Cir. 2008). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Brooks, 446 F.3d at 1162. At the outset, the moving party has the burden of demonstrating that there are no genuine issues of material fact, but once that burden is met the burden shifts to the nonmoving party to bring the court's attention to evidence demonstrating a genuine issue for trial. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). Overcoming that burden requires more than speculation or a mere scintilla of evidence. Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008). With these standards in mind, we consider whether the District Court erred in concluding that Hartford was entitled to summary judgment on Paylor's FMLA claims.

III.

7

Paylor raises three arguments on appeal.  First, she argues that the Severance Agreement is invalid under DOL regulations insofar as it purports to release Paylor's "prospective" FMLA rights.  Second, Paylor argues that she did not sign the Severance Agreement knowingly and voluntarily.  And third, she argues that the Severance Agreement should be held invalid because it is contrary to the public policy manifested by the FMLA.

## A.

Paylor's principal argument is that the District Court erred in concluding that she waived her FMLA claims when she signed the Severance Agreement.  Paylor says this waiver cannot be enforceable against her because the FMLA does not permit employees to waive "prospective rights" without DOL or court approval, and her rights in this case were "prospective" in the sense that she had—at the time she signed the agreement—an outstanding request for FMLA leave.  According to Paylor, then, the District Court ought to have found the waiver invalid and allowed her to proceed on her FMLA claim.

### 1.

Evaluating this argument requires a brief detour to discuss the history of the DOL regulation at issue.  Before 2009, § 825.220(d) did not include the word "prospective" in its discussion of an employee's FMLA rights.  The regulation said, simply, "[e]mployees cannot waive, nor may employers induce employees to

8

waive, their rights under FMLA." 29 C.F.R. § 825.220(d) (2008).  There was, for a time, a circuit split over the meaning of this language.  The Fifth Circuit, noting that the "examples of nonwaivability [contained in the regulation] concern prohibitions on the prospective waiver of rights under FMLA," held that "[a] plain reading of the regulation is that it prohibits prospective waiver of rights, not the post-dispute settlement of claims."  Farris v. Williams WCP-I, Inc., 332 F.3d 316, 321 (5th Cir. 2003) (emphasis added).

The Fourth Circuit reached a different conclusion, and disagreed explicitly with Farris, in holding that "[t]he regulation's plain language prohibits both the retrospective and prospective waiver or release of an employee's FMLA rights." Taylor v. Progress Energy, Inc., 415 F.3d 364, 368 (4th Cir. 2005), vacated, No. 04-1525, 2006 U.S. App. LEXIS 15744 (4th Cir. June 14, 2006) ("Taylor I").  The defendant in Taylor I filed a petition for rehearing en banc, and the DOL filed an amicus brief supporting that petition.  On rehearing before the panel that wrote Taylor I, the DOL argued that § 825.220(d) prohibited the waiver of prospective, but not retrospective, FMLA rights.  The panel again disagreed, holding that "the plain language of section 220(d) precludes both the prospective and retrospective waiver of all FMLA rights."  Taylor v. Progress Energy, Inc., 493 F.3d 454, 456 (4th Cir. 2007) ("Taylor II").  The Fourth Circuit panel therefore reinstated its original opinion.  Id. at 457.

9

In January, 2009, the Department of Labor amended the regulation to include the word "prospective," thereby endorsing the Fifth Circuit's interpretation. The current version of the regulation reads:

> Employees cannot waive, nor may employers induce employees to waive, their <u>prospective</u> rights under FMLA. For example, employees (or their collective bargaining representative) cannot "trade off" the right to take FMLA leave against some other benefit offered by the employer. <u>This does not prevent the settlement or release of FMLA claims by employees based on past employer conduct</u> without the approval of the [DOL] or a court.

29 C.F.R. § 825.220(d) (emphasis added). The Fourth Circuit acknowledged as much, rejecting an argument in a post-amendment case that the circuit should continue to follow <u>Taylor II</u>. <u>See</u> <u>Whiting v. Johns Hopkins Hosp.</u>, 416 Fed. App'x 312, 316 (4th Cir. 2011) ("After all, it is the DOL, not this court, that is charged with the authority to promulgate FMLA regulations.").

It is now, therefore, well-settled that an employee may not waive "prospective" rights under the FMLA, but an employee <u>can</u> release FMLA claims that concern past employer behavior. The only remaining issue is the meaning of the word "prospective" as it concerns FMLA rights, which is a question of first impression in our circuit.

2.

Paylor interprets "prospective rights" under the FMLA to mean "the unexercised rights of a current eligible employee to take FMLA leave and to be

10

restored to the same or an equivalent position after the leave." Appellant's Br. at 15. The problem with this interpretation is obvious: it proves too much. All eligible employees possess an "unexercised" right, in the abstract, to FMLA leave. If by "prospective" rights the DOL regulation really meant "unexercised" rights, the FMLA would make it unlawful to fire any eligible employee, or at least any eligible employee with an outstanding request for FMLA leave. That is not the law: substantive FMLA rights are not absolute. For example, an employer is not liable for interference if the employer can show that it refused to restore an employee to his position of employment for a reason unrelated to his FMLA leave. See Spakes v. Broward Cnty. Sheriff's Office, 631 F.3d 1307, 1310 (11th Cir. 2011); Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1208 (11th Cir. 2001) ("An employer can deny the right to reinstatement . . . if it can demonstrate that it would have discharged the employee had he not been on FMLA leave."). Paylor's interpretation of "prospective rights" is thus too expansive.

The better interpretation of "prospective rights," and the one that emerges quite clearly from the plain language of § 825.220(d), is that "prospective rights" under the FMLA are those allowing an employee to invoke FMLA protections at some unspecified time in the future. Prospective waiver is "[a] waiver of something that has not yet occurred, such as a contractual waiver of future claims

11

for discrimination upon settlement of a lawsuit." Black's Law Dictionary 1718 (9th ed. 2009) (emphasis added). An employer could not, for example, offer all new employees a one-time cash payment in exchange for a waiver of any future FMLA claims. That waiver would be "prospective," and therefore invalid under the FMLA, because it would allow employers to negotiate a freestanding exception to the law with individual employees.

Paylor's circumstances are different. The Severance Agreement she signed did not ask Paylor to assent to a general exception to the FMLA, but rather to a release of the specific claims she might have based on past interference or retaliation. Section 825.220(d) makes clear that the FMLA's private right of action attaches to the employer's conduct—i.e., to the alleged act of interference or retaliation—and not to some free-floating set of "unexercised" FMLA rights. And the text of the regulation explicitly contemplates the possibility that an employee can settle claims "based on past employer conduct." § 825.220(d). We therefore reject Paylor's interpretation of "prospective" FMLA rights; § 825.220(d)'s prohibition of "prospective" waiver means only that an employee may not waive FMLA rights, in advance, for violations of the statute that have yet to occur.

3.

Having answered the interpretive question, all that remains is the application of § 825.220(d) to the facts of Paylor's case. Here, the conduct Paylor complains

about all happened <u>before</u> she signed the Severance Agreement. Paylor argues, specifically, that Hartford both interfered with and retaliated against her FMLA request when the company asked her to choose between the PIP and the Severance Agreement. That allegedly unlawful conduct all occurred, at the latest, on September 16, 2009. But Paylor signed the Severance Agreement on September 17, 2009, thereby wiping out any backward-looking claims she might have had against her employer. In signing the agreement and accepting her severance benefits, Paylor settled claims "based on past employer conduct," § 825.220(d), and so the District Court did not err in concluding that the agreement was valid and that it entitled Hartford to judgment as a matter of law.

B.

Paylor's second argument is that her waiver was not "knowing and voluntary." We have said that employees can waive employment claims when their waiver is "voluntary and knowing based on the totality of the circumstances." <u>Myricks v. Fed. Reserve Bank of Atlanta</u>, 480 F.3d 1036, 1040 (11th Cir. 2007).[1] Specifically, we consider (1) the education and business experience of the employee; (2) the time the employee spent considering the agreement before

---

[1] Paylor invites us to apply the seven-factor test applied to claims under the Older Workers Benefit Protection Act, 29 U.S.C. § 621 <u>et. seq.</u> ("OBWPA"), because she "was over the age of forty (40) at the time the [Severance Agreement] was signed." Appellant's Br. at 27. We decline the invitation. We see no reason to jettison the tried-and-true "totality of the circumstances" test, <u>see</u> <u>Myricks v. Fed. Reserve Bank of Atlanta</u>, 480 F.3d 1036, 1040 (11th Cir. 2007), simply because of the plaintiff's age.

signing it; (3) the clarity of the language in the agreement; (4) the employee's opportunity to consult with an attorney; (5) whether the employer encouraged or discouraged consultation with an attorney; and (6) the consideration given in exchange for the release compared to the benefits the employee was already entitled to receive. Id.

The District Court did not err in concluding that Paylor executed the Severance Agreement knowingly and voluntarily. Paylor was 56 years old at the time she signed the agreement, and had worked in the insurance industry for more than 20 years. Though she did not graduate from high school or college, Paylor had attended college classes and taken additional courses relating to the insurance industry. Paylor took only one day to consider the Severance Agreement, but said in her deposition that she did not know how long she had to review it because she did not read it thoroughly. The agreement expressly stated that she had 21 days to review it. The agreement was clearly worded, and Paylor said in her deposition that she understood the waiver language. Paylor acknowledged that the agreement recommended that she consult an attorney. Finally, Paylor received severance pay to which she was not otherwise entitled in exchange for signing the agreement. Considering the totality of the circumstances, there is not genuine issue of material fact as to whether Paylor's waiver was knowing and voluntary, and so the District Court did not err in entering summary judgment for Hartford on this claim.

14

C.

Paylor's final argument is that the waiver she signed is contrary to public policy.  She argues, in brief, that the FMLA was passed "so employees would not have to choose between their jobs and their families."  Appellant's Reply Br. at 7. Because Hartford presented Paylor with the Severance Agreement before definitively informing her that her most recent FMLA request had been approved, Paylor says she was "forced into an uninformed choice," and that "violates the very tenants of the FMLA and undermines the purposes for which Congress enacted the FMLA."  Id.

We need not address Paylor's public-policy argument because she did not raise the issue before the District Court.  We have said repeatedly that we will not consider an issue raised for the first time on appeal.  See, e.g., Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("The reason for this prohibition is plain: as a court of appeals, we review claims of judicial error in the trial courts.") (emphasis added).  Because Paylor did not make her public-policy argument in the District Court, we will not consider the argument for the first time in this court.

IV.

We add, as a final note, that the attorneys in this case could have saved themselves, their clients, and the courts considerable time, expense, and heartache

15

had they only paused to better identify the issues before diving into discovery.  The dispute in this case was really very narrow: Paylor requested FMLA leave on one day, and a short time later her employer asked her to choose between a PIP and the Severance Agreement.  The parties agreed at oral argument—but only at oral argument—that the entire dispute boils down to the temporal proximity between Paylor's FMLA request and Hartford's offering the Severance Agreement.  That's the whole case.

That such a straightforward dispute metastasized into the years-long discovery sinkhole before us on appeal is just the latest instantiation of the "shotgun pleading" problem.  See Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979 (11th Cir. 2008) ("[T]his court has been roundly, repeatedly, and consistently condemning [shotgun pleadings] for years, long before this lawsuit was filed.").[2]

---

[2] See also Starship Enter. of Atlanta, Inc. v. Coweta Cnty., Ga., 708 F.3d 1243 (11th Cir. 2013); PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802 (11th Cir. 2010); Cook v. Randolph Cnty., Ga., 573 F.3d 1143 (11th Cir. 2009); Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273 (11th Cir. 2006); Ambrosia Coal & Const. Co. v. Pages Morales, 368 F.3d 1320 (11th Cir. 2004); Strategic Income Fund, LLC v. Spear, Leeds, and Kellogg Corp., 305 F.3d 1293 (11th Cir. 2002); Byrne v. Nezhat, 261 F.3d 1075 (11th Cir. 2001); Magluta v. Samples, 256 F.3d 1282 (11th Cir. 2001); Johnson Enters. of Jacksonville, Inc., v. FPL Group, Inc., 162 F.3d 1290 (11th Cir. 1998); BMC Indus., Inc. v. Barth Indus., Inc., 160 F.3d 1322 (11th Cir. 1998); GJR Inves., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359 (11th Cir. 1998); Cramer v. State of Florida, 117 F.3d 1258 (11th Cir. 1997); Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162 (11th Cir. 1997); Cesnik v. Edgewood Baptist Church, 88 F.3d 902 (11th Cir. 1996); Fikes v. City of Daphne, 79 F.3d 1079 (11th Cir. 1996); Boatman v. Town of Oakland, Fla., 76 F.3d 341 (11th Cir. 1996); Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364 (11th Cir. 1996); Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554 (11th Cir. 1995); Oladeinde v. City of Birmingham, 963 F.2d 1481 (11th Cir. 1992); Pelletier v. Zweifel, 921 F.2d 1465 (11th Cir. 1991); Fullman v. Graddick, 739 F.2d 553 (11th Cir. 1984).

16

The story is, by now, a familiar one: the plaintiff kicks things off with a shotgun pleading, where "each count . . . adopts the allegations of all preceding counts. Consequently, allegations of fact that may be material to a determination of count one, but not count four, are nonetheless made a part of count four . . . . [I]t is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trs. of Cent. Florida Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996).

In this case, Paylor's counsel conceded outright at oral argument that Paylor's complaint "doesn't meet the [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)] standard." And indeed, both the complaint and the amended complaint are almost totally useless. The reader learns that there is a statute called the Family Medical Leave Act, and hears in Counts II and III the allegation that "[Hartford] violated the Family Medical Leave Act by interfering with and/or denying [Paylor's] leave under the act and by ultimately terminating [Paylor]," and that "[Hartford] has violated the FMLA by retaliating against [Paylor] for [Paylor's] exercising and/or attempting to exercise [her] rights under the Family Medical Leave Act," but that is all the reader learns. No specific

---

Each of these cases was decided by a unanimous court. All of the judges of this court, active and senior, have either authored or concurred in an opinion condemning shotgun pleadings.

factual allegation informs the reader how, precisely, the defendant interfered with or retaliated against the plaintiff.

Defense attorneys, of course, are not helpless in the face of shotgun pleadings—even though, inexplicably, they often behave as though they are. A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6)[3] or for a more definite statement pursuant to Rule 12(e)[4] on the ground that the complaint provides it with insufficient notice to enable it to file an answer.

---

[3] Rule 12(b)(6) provides that, in responding to a complaint, a defendant—prior to answering the complaint—may move the district court to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[4] Rule 12(e), titled "Motion for a More Definite Statement," states:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e). In Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126 (5th Cir. 1959), we explained that

> [u]nder 12(e) the Court must determine whether the complaint is such that a party cannot reasonably be required to frame a responsive pleading. But the fact that a careful Judge, in the exercise of that wise discretion controlled by the prescribed principles of that rule, might so conclude does not permit him to dismiss the complaint for failure to state a claim. It may well be that petitioner's complaint as now drawn is too vague, but that is no ground for dismissing his action.

Id. at 130 (internal quotations omitted); see Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (noting that this circuit adopted as binding all decisions of the former Fifth Circuit handed down prior to October 1, 1981). "The remedy for an allegation

18

Rather than availing itself of the protective tools in the Federal Rules of Civil Procedure, Hartford responded to Paylor's shotgun pleading with a shotgun answer: 19 one-line affirmative defenses, none of which refers to a particular count, and none of which indicates that Hartford was even aware of when the retaliation and interference allegedly occurred.  At oral argument, Hartford's counsel acknowledged that the complaint was totally lacking in specifics, but maintained—in essence—that all's well that ends well: after all, the parties were able to sort things out through discovery.  Even if that were true—and it isn't, as evidenced by the parties' ongoing bickering over even the most picayune facts in the case—why should parties wait until discovery to identify, with precision, the subject of the litigation?  That is exactly backward.  Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading.

In any case, the parties delivered this mess to the District Court.  Instead of demanding a repleader, see Davis, 516 F.3d at 984 ("In light of defense counsel's failure to request a repleader, the court, acting sua sponte, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement.  The necessity for doing so should have become

---

lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 590 n. 9, 127 S.Ct. 1955, 1985, 167 L. Ed. 2d 929 (2007) (Stevens, J., dissenting) (internal quotations omitted).

19

starkly apparent on reading the complaint."), the District Court tossed the case overboard to a Magistrate Judge for discovery.

At that point it was too late: the discovery goat rodeo had begun.  Because a Magistrate Judge has no authority to narrow the scope of discovery (because that would constitute a dispositive ruling, a power forbidden to Magistrate Judges, see 28 U.S.C. § 636(b)(A)), the parties had a free hand to take depositions and collect affidavits, business records, and interrogatories—most of which bear no obvious connection to the crux of the dispute.  By the time the case wheezed its way back to the District Judge, she unhappily discovered that the record had become "voluminous," consisting of "hundreds of pages of deposition testimony, witness affidavits, correspondence, various business records, and discovery responses." Hollinger, No. 6:11-cv-59-Orl-19TBS, ECF Doc. 57, at 7.

The persistence of the shotgun pleading problem is particularly frustrating because the relevant actors all have it within their power to avoid it.  Nothing is stopping plaintiffs from refraining from writing shotgun pleadings.  Certainly nothing is stopping defense lawyers from asking for a more definite statement; indeed, their clients would be well-served by efforts to resolve, upfront, the specific contours of the dispute, thereby lessening or even eliminating the need for costly discovery.  And nothing should stop District Courts from demanding, on their own initiative, that the parties replead the case.  Indeed,

20

[i]f the trial judge does not quickly demand repleader, all is lost—extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits. Given the massive record and loose pleadings before it, the trial court, whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials; the case therefore proceeds to trial without proper delineation of issues, as happen[s] [frequently].  An appeal ensues, and the court of appeals assumes the trial court's responsibility of sorting things out.  The result is a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the court[s'] ability to administer justice.

Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998) (internal citations and quotations omitted).  That is what happened here.

\*        \*        \*

Because Paylor waived her claims against Hartford by signing the Severance Agreement, the District Court correctly entered summary judgment on behalf of the defendant on Paylor's FMLA claims.  The judgment of the District Court is, accordingly,

AFFIRMED.

21