**INSURANCE CONCEPTS, INC.,**
**Plaintiff-Appellee,**

**v.**

**WESTERN LIFE INSURANCE COMPA-**
**NY, Defendant-Appellant.**

No. 78–2581.

United States Court of Appeals,
Fifth Circuit.

March 16, 1981.

David J. Bailey, Hugh E. Wright, Atlanta, Ga., for defendant-appellant.

Taylor W. Jones, Atlanta, Ga., for plaintiff-appellee.

Before INGRAHAM, RONEY and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

Insurance Concepts, Inc. ("Insurance Concepts"), an insurance agency, brought this diversity action alleging that Western Life Insurance Company ("Western Life") had breached a written settlement agreement by which the parties terminated previous litigation in the district court. This dispute arose when Western Life refused to fulfill

its obligation under the settlement agreement to pay its former general agent, Insurance Concepts, approximately $22,000 in "renewal commissions" that the agent had earned from the sale of Western Life's insurance policies. Western Life claimed that it was entitled to several setoffs for an accounting error and the cancellation of several life insurance policies. In awarding judgment to Insurance Concepts, the district court ruled against Western Life's claim that the amount of the settlement should be reduced. For the reasons stated below, we conclude that the district court correctly decided the several issues in this case except for the treatment of Western Life's setoff for the accounting error. Therefore, we affirm the district court in part and reverse in part. First, we outline the relevant facts.

The appellee herein, Insurance Concepts, served as a general agency for the appellant, Western Life, from October 1, 1975, until May 24, 1976. Western Life terminated the relationship at that time as it was entitled to do under the terms of the general agency agreement. Thereafter, Western Life refused to pay certain commissions, expenses, and production bonuses, which Insurance Concepts claimed it was due. Litigation ensued in the United States District Court for the Northern District of Georgia in which Insurance Concepts sought a total of $253,897.38 in commissions and production bonuses. $30,709.80 of Insurance Concepts' claim represented unpaid commissions and bonuses on policies which had been issued by Western Life before the business relationship between the life insurance company and its agent was terminated. The remaining $223,187.58 was the amount of commissions and bonuses Insurance Concepts claimed for insurance policy applications which the general agent had submitted to Western Life for approval but for which no policies had been issued when the general agency agreement was terminated.

On November 10, 1976, Western Life and Insurance Concepts executed a settlement agreement which ended the first lawsuit. As the parties stated in the settlement agreement, they intended "to compromise and settle all claims and controversies which have been asserted or could have been asserted" in the lawsuit. Under the terms of the settlement agreement, Insurance Concepts waived and released its claim to the $223,187.58 in commissions on life insurance applications which had been pending on the date the general agency contract was terminated. The settlement required Western Life to pay Insurance Concepts $27,203.80 for commissions due on policies which had been issued prior to the termination of the general agency agreement. In addition, Western Life agreed to pay its former agent "renewal commissions" in the amount of 8.8% of the annual premiums on all policies listed in various exhibits to the settlement agreement.

Furthermore, paragraph 6 of the settlement agreement provided as follows:

Each of the parties does hereby agree to dismiss and does hereby dismiss with prejudice all claims asserted against the other party in the above-stated case and does hereby release and indemnify the other party from all claims that were asserted or could have been asserted in said case. All rights of each party with respect to the other party shall be determined by this agreement.

Following the settlement agreement, Western Life paid Insurance Concepts the $27,-203.80, and the first case in the district court was dismissed with prejudice.

Soon after the settlement agreement was executed Western Life refused to pay Insurance Concepts all or any part of the 8.8% renewal commissions due on the first anniversary renewals of the policies listed in the exhibits to the settlement agreement. In correspondence between the parties, Western Life admitted that it owed Insurance Concepts a net amount, after the proposed setoffs, of $10,490.70. However, this amount was never paid. Although there were numerous items which Western Life contended it was owed by Insurance Concepts, the two primary items which Western Life sought to set off against the renewal

commissions were a $7,608.00 overpayment which Western Life had made due to its own accounting error and a $2,383.40 "chargeback" for commissions on three insurance policies that Insurance Concepts had sold but which were cancelled by the policyholders subsequent to the settlement agreement. Insurance Concepts then brought this action in March, 1977, seeking to recover for Western Life's alleged breach of the settlement agreement or, alternatively, requesting the district court to set aside the settlement on the ground that it was fraudulently induced.

Insurance Concepts immediately filed its motion for partial summary judgment, including an affidavit of the agency's secretary-treasurer concerning the amounts due under the settlement agreement. Shortly thereafter, Western Life filed its first motion for leave to amend its answer and to add a counterclaim. At this point in the proceedings no interrogatories had been filed, no depositions had been taken, and no counter-affidavits had been submitted by Western Life in opposition to the appellee's motion for partial summary judgment. On September 7, 1977, the district court granted Insurance Concepts' motion for partial summary judgment thereby denying Western Life's claim of setoffs for amounts relating to transactions which predated the November, 1976, settlement agreement. Additionally, the district court denied Western Life's proffered counterclaim because, in the court's view, it appeared to be "merely a variation on the offsets which are not permitted under the settlement agreement." However, in its order the district court gave Western Life twenty days to present evidence to establish that its counterclaim was not merely a variation on its setoff claims. Following Western Life's failure to respond, the district court set the partial summary judgment for Insurance Concepts at $22,881.32.

On December 20, 1977, the appellant filed its second motion for leave to amend its answer and to add a counterclaim in which it attempted to assert claims against Insurance Concepts for breach of the original general agency agreement, and for negligence and fraud arising out of the delivery of a life insurance policy in February, 1976, to an individual who was diagnosed as having terminal cancer after he had submitted an application for insurance, paid the initial premium, and passed his physical, but before the policy was delivered to him.

On January 24, 1978, the district court denied Western Life's second motion for leave to amend its answer and to add a counterclaim. Once Insurance Concepts abandoned its remaining claim for exemplary damages and the district court denied Insurance Concepts' application for attorney's fees, Western Life brought this appeal.

Western Life raises two main issues on appeal. First, the appellant contends that the district court erred in holding that the parties intended the settlement agreement to resolve all of their claims, both known and unknown. Essentially, Western Life argues that the phrase "all claims" in the settlement agreement is ambiguous and that the parties intended the phrase to mean "all *known* claims." Thus, if the settlement agreement were to be read as foreclosing relitigation of "all known claims," Western Life would be able to raise its claims concerning the $7,608 accounting error and the commission chargebacks for the insurance policies which were cancelled after the settlement. According to Western Life a hearing is necessary to determine the intent of the parties as to what should be covered by the settlement agreement.

 Without a doubt, public policy favors the settlement of claims brought before the courts. "Settlement agreements have always been a favored means of resolving disputes. When fairly arrived at and properly entered into, they are generally viewed as binding, final, and as conclusive of rights as a judgment." *Thomas v. Louisiana*, 534 F.2d 613, 615 (5th Cir. 1976) (footnotes omitted); *see also Sollek v. Laseter*, 126 Ga.App. 137, 190 S.E.2d 148 (1972). This court has recognized before that it is a "well-settled rule that the construction and enforcement of settlement

agreements are governed by principles of local law applicable to contracts generally." *Florida Education Association, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973). Both Western Life and Insurance Concepts agree that the settlement agreement here should be examined under Georgia law. Under Georgia law, the existence or nonexistence of an ambiguity in an agreement is a question of law to be resolved by the court. *Stone Mountain Scenic Railroad, Inc. v. Stone Mountain Memorial Association*, 230 Ga. 800, 199 S.E.2d 216 (1973); *see also DeKalb County v. Everhart*, 242 Ga. 104, 249 S.E.2d 571 (1978). Where the language of a contract is definite and unambiguous, the contract will be enforced according to its terms. *Opelika Mfg. Corp. v. City of Hawkinsville, Georgia*, 525 F.2d 941 (5th Cir. 1976). In such cases the court will not need to resort to surrounding circumstances to construe the meaning of the agreement.

 Upon careful review of the settlement agreement, along with its attached exhibits, we do not perceive any inherent ambiguity in the language employed by the parties in settling their first lawsuit. Where the provisions of a contract are not ambiguous, the interpretation of the contract is a question of law for the court to decide. *Henderson Mill Ltd. v. McConnell*, 237 Ga. 807, 809, 229 S.E.2d 660, 661 (1976); *Brigadier Industries Corp. v. Pippin*, 148 Ga.App. 145, 251 S.E.2d 114, 115 (1978); *Ga.Code Ann.* §§ 20–701, 20–704(1). The intent of the parties as expressed in the settlement agreement is clear from the plain meaning of the words employed therein. When reading the agreement and exhibits as a whole it is evident that the parties sought to terminate all claims which had arisen or could have arisen out of Western Life's obligation to pay to Insurance Concepts the commissions and bonuses which were owed the agency for its efforts in selling those specific insurance policies listed in the exhibits to the settlement agreement. Thus, unlike the district court, we conclude that the settlement agreement was intended to settle forever only those claims of the parties which related to the dispute over the commissions to be paid to the former general agency for the insurance policies specified in the settlement agreement. Therefore, we must examine the two items for which Western Life contends on appeal that it is entitled to a setoff against the settlement amount in order to determine whether they fall within the scope of the agreement.

The first setoff item consisted of $2,383.40 and represented the so-called "Nichols policies chargebacks." The $2,383.40 was part of the first year sales commissions on three life insurance policies which were originally issued by Western Life to Donald F. Nichols and his wife pursuant to applications submitted by Insurance Concepts. The Nichols voluntarily terminated their policies on November 16, 1976, one week *after* the settlement agreement was executed. The Nichols policies were listed in Exhibit C to the settlement agreement and the commission on those policies was included in the net payment of first year premiums under paragraph 1 of the settlement agreement. There was no provision in the settlement agreement to provide for the contingency of adjustments to the settlement amount in the event of policy cancellations.

Essentially, Western Life argues that it should be allowed a setoff for the commissions attributable to the cancelled Nichols policies because at the time of the settlement the appellant did not know that the policies would be cancelled. This argument is not persuasive.

 Where the intent of the parties in entering a negotiated settlement is reasonably clear from the plain language of the settlement agreement itself and the surrounding circumstances, this court will not disturb the parties' agreement simply because the language of the settlement was not as specific or comprehensive as it might have been. Again, we think the parties here clearly intended to settle all matters concerning the commissions and bonuses to be paid Insurance Concepts for those insurance policies specified in the settlement

agreement. Western Life is a large, sophisticated insurance company and had, or at least should have had, reason to expect that of the twenty-five insurance policies included in Exhibit C, it was possible, perhaps even probable, that some would be cancelled. We conclude that despite the cancellation of the Nichols policies, the commissions attributable to those policies fell within the scope of the settlement agreement. Therefore, the district court was correct in holding that Western Life should not be allowed a setoff for the Nichols policies chargebacks.

 Western Life also sought to set off a $7,608.00 accounting error against the settlement amount. It is undisputed that Western Life overpaid Insurance Concepts in March, 1976, in the amount of $7,608.00 as a result of a "keypunch" computer error by an employee in Western Life's accounting department. This amount was paid to Insurance Concepts as part of a check in a greater amount, the balance of which represented payment for commissions and bonuses that Insurance Concepts had indeed earned. This overpayment did not relate in any way to the insurance policies listed in the exhibits to the settlement agreement. The accounting error was not discovered by Western Life until sometime in December, 1976, the month following the execution of the settlement of the first lawsuit. Apparently, Insurance Concepts was also unaware at the time of settlement that it had received a payment to which it was not entitled.

In granting Insurance Concepts' motion for partial summary judgment the district court held that the broad language of the settlement agreement at issue here "necessarily subsumes clerical errors giving rise to payments defendant feels never should have been paid." While this might ordinarily be true as far as the calculation of a settlement amount is concerned, we do not agree with the district court that under the settlement agreement Western Life may not set off against the settlement amount where there has been an accounting error, unknown by both parties at the time of settlement, concerning a matter which is totally unrelated to the controversy that the parties intended to compromise.

In our view the accounting mistake was a mutual one. Both parties could have discovered the accounting error had they been prudent enough to conduct an audit, either jointly or separately, before the settlement agreement was executed. In *D. H. Overmyer Co., Inc. v. Joe Summers Roofing Co., Inc.*, 120 Ga.App. 188, 169 S.E.2d 821 (1969), a case concerning the settlement of a dispute between a landowner and a subcontractor, the Georgia Court of Appeals wrote:

> [I]t is generally agreed that a settlement contract based on a mistake of material fact, where the mistake was not due to the negligence of the party claiming mistake and where it did not pertain to a fact in dispute, may be invalidated on that ground like other agreements. See *Collins v. Collins*, 165 Ga. 198(4), 140 S.E. 501; *Richardson v. Seibert*, 38 Ga.App. 76, 142 S.E. 755; 15 Am.Jur.2d 969, Compromise and Settlement, § 35. "If the consideration be founded in a mistake of fact or of law, the promise founded thereon cannot be enforced." Code § 20–308. ... Thus it does not appear that the alleged mistake [in this case] pertained to a matter that was disputed or believed to be uncertain or that was intended to be resolved through the alleged compromise. Instead, Overmyer's answer showed that the mistake was a mutual one and that it arose through the subcontractor's omission to credit some payments against the balance due on the contracts between the general contractor and the subcontractor.

169 S.E.2d at 822.

We do not think that Insurance Concepts and Western Life intended the settlement agreement to cover claims for an accounting error of which both parties could have been aware when that error concerned an overpayment that was unrelated to the commissions and bonuses contested in the first lawsuit. Inasmuch as the evidence clearly indicates that the amount and the fact of the overpayment were not in contro-

versy, we hold that Western Life should be allowed a setoff of $7,608.00 against the settlement amount.

■ Western Life's second major contention on appeal is that the district court erred in not permitting the appellant to assert two separate counterclaims. Western Life first moved to assert what it labeled an omitted counterclaim under Fed.R. Civ.P. 13(f) in which it sought to recover from Insurance Concepts over $13,000 for "payments" and "benefits" which Western Life alleged Insurance Concepts "should not have received." The district court found that the proffered counterclaim was "merely a variation" on Western Life's claim for the setoffs against the settlement amount which the court had determined were not permitted under the settlement agreement. Not only do we conclude that the district court did not abuse its discretion in denying the omitted counterclaim, but it is apparent that as a result of this court's preceding resolution of the setoff issue, the appellant in essence has received adequate substantive consideration of the various claims that it sought to raise by its first motion to amend.

■ By means of a second proffered counterclaim, Western Life sought to assert new claims of negligence and fraud against Insurance Concepts arising out of the delivery of a life insurance policy to an individual who was terminally ill with cancer. The district court denied the appellant's motion to amend and to add the counterclaim under Fed.R.Civ.P. 13(e).[1] The court ruled that the second counterclaim was "not peculiarly relevant" to Insurance Concepts' claim seeking enforcement of the settlement agreement. Western Life argues here that the lower court abused its discretion in not permitting the counterclaim. It contends that Insurance Concepts' only asset of any consequence is the judgment it won on the settlement agreement, and that if the counterclaim is denied any judgment

that Western Life may gain from its after-acquired claims may turn out to be uncollectible.

We are not persuaded. The grant or denial of a motion to allow the filing of a supplemental counterclaim is within the trial court's discretion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co.*, 535 F.2d 287 (5th Cir. 1976); 6 Wright & Miller, *Federal Practice and Procedure* (1971), § 1428. We agree with the trial court that Western Life's asserted counterclaim concerning Insurance Concepts' allegedly negligent or fraudulent delivery of a life insurance policy to a terminally ill policyholder was "not peculiarly relevant" to the basic action to enforce the settlement agreement. Furthermore, Western Life has filed a separate action in the district court asserting claims similar to those it sought to assert through its proffered counterclaim. That action has been stayed pending the outcome of this appeal. We conclude that the district court did not abuse its discretion in denying Western Life's second motion for leave to assert an after-acquired counterclaim.

In summary, the appellant is entitled to a reduction of $7,608.00 in the district court's judgment for Insurance Concepts. In all other respects, however, the judgment is affirmed.

AFFIRMED in part and REVERSED in part.

---

1. Fed.R.Civ.P. 13(e):

 Counterclaim Maturing or Acquired After Pleading. A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.