[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11608
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-01655-ELR

KRYSTAL MOORE,

Plaintiff - Appellant,

versus

CAMDEN PROPERTY TRUST,
d.b.a. Camden Development, Inc.,
CAMDEN VANTAGE, LLC,
FOWLER, HEIN, CHEATWOOD & WILLIAMS, P.A.,
f.k.a. Fowler, Hein, Cheatwood, Passiano, & Williams, P.A.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 26, 2020)

Before ROSENBAUM, JILL PRYOR and BRANCH, Circuit Judges.

PER CURIAM:

Krystal Moore, proceeding *pro se*, appeals the district court's dismissal of her amended complaint raising seven claims against Camden Property Trust d/b/a Camden Development, Inc.; Camden Vantage, LLC (collectively, "Camden"); and the law firm that represented Camden, Fowler, Hein, Cheatwood & Williams, P.A., f/k/a Fowler, Hein, Cheatwood, Passiano & Williams, P.A. ("FHCW"). Moore argues that the district court impermissibly relied on a local rule in dismissing her complaint and should not have dismissed under Federal Rule of Civil Procedure 12(b)(6). After careful consideration, we affirm the district court's grant of the motions to dismiss.

## I.    BACKGROUND

### A.    Factual Background[1]

In October 2015, Moore entered into a lease agreement with Camden for an apartment, with the initial term ending in January 2017. The lease contained an automatic renewal provision requiring a 60-day written notice to terminate the lease at the end of the initial term, or the lease would renew on a month-to-month basis.

---

[1] We recite the facts as alleged in Moore's complaint, accepting the allegations as true and construing them in the light most favorable to her. *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014).

Moore alleged that starting about a month after entering into the lease, Camden began discriminating against her, "assess[ing] . . . unwarranted fees and penalties against [her] due to her race and familial status." Doc. 3 at 6.[2] She further alleged that "Camden wrongfully rejected [her] rent to initiate . . . dispossessory proceedings, and also wrongfully assessed late fees to [her] account." *Id.* at 9. And, on two occasions around January 2016 and May or June 2016 after Moore made maintenance requests, Moore alleged that a Camden employee entered Moore's apartment to talk and refused to leave. As a result of this alleged misconduct, Moore filed a complaint with the United States Department of Housing and Urban Development ("HUD") in June 2016 ("HUD Complaint").

Moore alleged that in retaliation for the HUD Complaint, in October 2016 Camden's assistant manager rejected Moore's rent and filed a dispossessory proceeding against her. To resolve both the HUD Complaint and the dispossessory action, in late December 2016 Camden and Moore signed a settlement agreement in which Moore released claims "arising out of or relating to [her] tenancy with [Camden], and pursuant to any federal, state, or fair housing laws" that "[she] had,

---

[2] "Doc. #" refers to the numbered entry on the district court's docket.

3

now have, or may in the future claim to have, by reason of any act, matter, thing or cause whatsoever on or prior to the date of the Agreement." Doc. 47-3 at 3.[3]

The settlement agreement required that Moore (1) withdraw the HUD Complaint, (2) "agree not to litigate, file a lawsuit or pursue any claim against [Camden], arising out of any of the facts contained" in the complaint, and (3) pay all the past due rent to Camden "with the execution of the Agreement." *Id.* at 4. The agreement required Camden to dismiss the dispossessory action and offer Moore a 16-month lease with a term beginning in January 2017. During the 16-month lease, if Moore failed to pay her rent on time, she waived the right to bring claims for retaliation or discrimination under the Fair Housing Act ("FHA") if Camden filed a dispossessory action based on the late payment.

Before the settlement agreement was executed, Camden moved for and received a default judgment for Moore's failure to appear in court in the dispossessory action and sought a writ of possession. Before Camden received the writ, however, the parties executed the settlement agreement, and Moore paid Camden the past due rent and moved to vacate the default judgment. Moore's

---

[3] To the extent that we consider documents other than the complaint, we do so under the incorporation-by-reference doctrine. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002) (noting that the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment only if the attached document is central to the plaintiff's claims and undisputed). The settlement agreement attached to the defendants' motion to dismiss is central to Moore's claims. Although she alleged that the settlement agreement is unenforceable, she does not dispute its authenticity.

motion was granted. She alleged that there was an oral "first" settlement agreement between her and Camden, which contained materially the same terms as the signed agreement. The "second" agreement was the executed version of the agreement. Moore alleged that Camden breached the first agreement by filing for a default judgment, which eliminated her duty to perform, and then secured her signature for the second agreement "by fraud, misrepresentation, duress, and mistake." Doc. 3 at 14.

In January 2017, a lawyer from FHCW, which represented Camden, sent a letter informing HUD that Camden and Moore had settled the dispute privately and attaching the settlement agreement. The lawyer requested that HUD administratively close the case. Moore alleged that she did not consent to dismissing the HUD Complaint and that FHCW knew she did not intend to dismiss the complaint. She alleged that Camden and FHCW "sought to interfere with [her] freedom to exercise her right to complaint about discriminatory treatment . . . by making *ex parte*, false and misleading statements to HUD," resulting in the complaint's dismissal. *Id.* at 14.

Two months after the HUD Complaint was dismissed, Moore sought to amend it. Five days later, FHCW informed her by letter that Camden was terminating her tenancy and she was required to vacate within 30 days. In the letter, FHCW warned because that Moore had failed to execute a new lease

5

agreement as required by the settlement agreement, Camden would "non-renew and terminate" her month-to-month tenancy if she did not execute a new lease within five days of receiving the letter.  Doc. 46-6 at 2.  Moore alleged that the "reason Camden gave for seeking to terminate [her] tenancy was pretext" and "Camden had no reason to terminate [her] tenancy outside of [her] seeking to exercise her rights under the Fair Housing Act."  Doc. 3 at 11.  Accordingly, a month later, Moore initiated with HUD a second fair housing complaint against Camden.[4]

About two weeks later, in May 2017, Camden filed another dispossessory action against Moore.  The Magistrate Court of Fulton County, Georgia, after conducting a trial, awarded Camden a writ of possession and entered a judgment for holdover rent and court costs against Moore.  In the judgment, the court concluded that Camden "properly non-renewed the lease."  Doc. 47-9 at 2.

B.    Procedural History

Moore filed a complaint in the United States District Court for the Northern District of Georgia against Camden and FHCW the day before Camden initiated that May 2017 dispossessory action, alleging violations of the FHA.  She later amended the complaint ("First Amended Complaint") to assert seven counts against the defendants:

---

[4] There are no further allegations about this second fair housing complaint.

6

- Count I: Violation of the FHA, against Camden;

- Count III: Interference with Fair Housing Complainant's Exercise of Rights, against FHCW;

- Count IV: Declaratory Judgment - Lease Renewal and Denial of the Same, against Camden;

- Count V: Declaratory Judgment - Prior Agreements are Not Enforceable, against all defendants;

- Count VI: Abusive Litigation, against all defendants;

- Count VII: Trespass/Intentional Interference with Exclusive Possession, against Camden; and

- Count VIII: Intentional Infliction of Emotional Distress, against all defendants.[5]

One month later, FHCW filed a motion to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), for insufficient process and insufficient service of process, respectively. Camden filed a motion to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Moore failed to respond to Camden's motion to dismiss, even though the court gave her extensions of time to do so. Instead, four months after Camden and FHCW filed their motions, Moore filed a motion for leave to file a second amended complaint. The district court granted her motion, warning that it would allow no additional opportunity for amendment and

_____

[5] The complaint contained no Count II.

7

ordering Moore to file a second amended complaint within 30 days of the order. After 30 days elapsed, the court granted Moore another extension to file a second amended complaint, but she never filed one.

After Moore failed to file a second amended complaint, Camden and FHCW both filed motions to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Instead of filing a response to those motions, nearly two weeks after her response was due Moore requested an extension of time.

The district court denied Moore's request for an extension and noted that under the court's local rules, her failure to respond to the motions to dismiss indicated that she did not oppose the motions. *See* N.D. Ga. L. R. 7.1(B) ("Failure to file a response shall indicate that there is no opposition to the motion."). The district court "carefully reviewed the allegations in [Moore's] First Amended Complaint and Defendants' arguments in their motions to dismiss" and found the defendants' arguments to be "meritorious." Doc. 54 at 8. The district court dismissed Moore's First Amended Complaint "for the well-stated reasons by Defendants in their motions to dismiss." *Id.* Moore now appeals the court's dismissal.

## II.    STANDARD OF REVIEW

8

This Court reviews *de novo* the district court's grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Hunt v. Aimco Properties, LP*, 814 F.3d 1213, 1221 (11th Cir. 2016). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

We review a district court's application of its local rules for an abuse of discretion. *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1302 (11th Cir. 2009).[6] Under the abuse of discretion standard, we must affirm the district court unless we determine that the court made a clear error of judgment or applied an incorrect legal standard. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).

---

[6] Moore argues that when a court's interpretation of its local rules results in a dismissal with prejudice, the standard of review should be *de novo*. But, as discussed below, the district court did not dismiss Moore's complaint under a local rule; instead, it dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6). So, the appropriate standard of review is abuse of discretion.

9

We give "great deference to a district court's interpretation of its local rules."

*Clark v. Housing Auth. of Alma*, 971 F.2d 723, 727 (11th Cir. 1992).

### III.    DISCUSSION

**A.    The District Court Did Not Abuse Its Discretion When Applying Local Rule 7.1.**

Moore contends that the district court improperly applied Northern District of Georgia Local Rule 7.1, which provides that "[f]ailure to file a response [in opposition to a motion] shall indicate that there is no opposition to the motion." N.D. Ga. L.R. 7.1(B).  Citing to the unpublished case of *Giummo v. Olsen*, 701 F. App'x 922 (11th Cir. 2017) as support, she argues that the district court abused its discretion by failing to consider the merits of whether her complaint stated a claim on which relief could be granted and granting Camden's and LHCW's motions to dismiss based solely on her failure to timely file an opposition briefBut not only is *Giummo* nonbinding, it is also inapposite.

In *Giummo*, a panel of this court held that a district court abused its discretion when it granted a motion to dismiss automatically, without considering the merits, after the nonmovant failed to file an opposition brief.  701 F. App'x at 925.  Here, though, the district court stated that it "carefully reviewed the allegations in [Moore's] First Amended Complaint and Defendants' arguments in their motions to dismiss" and found the defendants' arguments to be "meritorious." Doc. 54 at 8.  Further, the district court adopted the rationale of the motions to

10

dismiss, dismissing "for the well-stated reasons by Defendants in their motions to dismiss." *Id.* That the district court chose to adopt the defendants' reasons rather than separately detailing them in an order demonstrated sufficient consideration of the merits of Moore's complaint. Accordingly, because the district court did not grant the motions to dismiss solely based on Moore's failure to file an opposition brief, but rather considered the complaint and the motion documents that were before it, the district court did not abuse its discretion. We thus proceed to the merits of the district court's dismissal.

**B.    The Second Settlement Agreement is Enforceable (Count V).**

We first address the validity of the settlement agreement because several of Moore's claims turn on its enforceability. In Count V, Moore sought a declaration that neither the first nor second agreement between her and Camden was enforceable because the "first agreement was superseded by the second agreement," and "the second agreement is void, as against public policy, and/or voidable, as procured by duress, mistake, fraud, and/or misrepresentation induced by Camden and FHCW." Doc 3 at 19.

Moore alleged that she and Camden entered into an oral settlement agreement—the first agreement—that required Camden to dismiss the October dispossessory action, but Camden instead sought a default judgment against Moore for failure to appear and then filed for a writ of possession. Next, through "false

statements about the writ and posture of the case," Camden allegedly secured her

signature on a "second agreement." *Id.* at 13. Moore's allegations fail to

demonstrate that the signed agreement between her and Camden was

unenforceable.

We use the applicable state's contract law—here, Georgia's—to construe

and enforce settlement agreements. *Ins. Concepts, Inc. v. W. Life Ins. Co.*, 639

F.2d 1108, 1111-12 (5th Cir. 1981).[7] Moore alleged that Camden breached the

first agreement by seeking a default judgment in the October dispossessory action

rather than dismissing it. In Moore's view, this breach relieved her of her duty to

perform under that agreement.

Under Georgia law, "[g]enerally, one injured by [a] breach of a contract has

the election to rescind or continue under the contract and recover damages for the

breach." *W. Contracting Corp. v. State Highway Dep't.*, 187 S.E.2d 690, 696 (Ga.

Ct. App. 1972). To justify rescission, there must be "material nonperformance or

breach," meaning that the breach was "so substantial and fundamental as to defeat

the object of the contract." *Jones v. Gaskins*, 284 S.E.2d 398, 400 (Ga. 1981);

*Lanier Home Center, Inc. v. Underwood*, 557 S.E.2d 76, 79 (Ga. Ct. App. 2001);

*see also* OCGA § 13-4-62. In other words, "to trigger the right to rescission, the

---

[7] In our en banc decision, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

act failed to be performed must go to the root of the contract." *Gen. Steel, Inc. v. Delta Bldg. Systems, Inc.*, 676 S.E.2d 451, 454 n. 13 (Ga. Ct. App. 2009).

Here, Moore alleged that the first settlement agreement required Camden to dismiss the October dispossessory action, but Camden instead sought a default judgment against Moore for failure to appear and subsequently filed for a writ of possession. Taking these allegations as true for purposes of the motions to dismiss, Camden's actions constitute a material breach. Thus, Moore had a right of rescission. But such right does not necessarily entitle Moore to the declaration she sought—that no prior agreements are enforceable—because the second settlement agreement, which Moore signed, contained largely the same terms as the first agreement. Even Moore seems to acknowledge this with her allegation that the second agreement superseded the first. Thus, if the second agreement is enforceable, Moore's right of recission as to the first agreement alone would not allow Count V to survive dismissal.

As to the second settlement agreement, Moore contends that it was voidable because her signature was secured "by fraud, misrepresentation, duress, and mistake" and the agreement was void against public policy. Doc. 3 at 13-14. Moore alleged that Camden secured her signature on a "second agreement" through "false statements about the writ and posture of the [October 2016 dispossessory case]." *Id.* at 13. This allegation lacks any specific facts about

13

Camden's false statements; it is merely conclusory. On this allegation alone, we cannot conclude that Moore sufficiently alleged that the purported second agreement was secured through fraud, misrepresentation, duress, or mistake. *See* Fed. R. Civ. P. 9(b) (requiring a party who alleged fraud or mistake to "state with particularity the circumstances constituting fraud of mistake"). Because Moore provided no factual allegations in support of her conclusion, she has failed to state a claim that the second agreement is unenforceable.

As to her allegation that the second agreement was contrary to public policy, Moore argues that because the agreement was "crafted to exempt [Camden's] future unlawful behavior against [her], from discrimination and retaliation claims under the Fair Housing Act," it is contrary to public policy. Appellant Br. at 35-36. Section 13-8-2 of the Georgia Code provides, in pertinent part, that "[a] contract that is against the policy of the law cannot be enforced." This code section also includes a nonexclusive list of contracts that are against public policy, and the contract at issue is not specifically prohibited. Although the list is not exhaustive, "[t]he power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power," which "should be exercised only in cases free from doubt." *Porubiansky v. Emory University*, 275 S.E.2d 163, 165 (Ga. Ct. App. 1980). "[C]ourts should be

14

extremely cautious in exercising the power to supervise private contracts which the lawmaking power has not declared unlawful." *Id.*

As a preliminary matter, the express language of the second agreement fails to support Moore's characterization that the agreement exempted future unlawful behavior. In the agreement, Moore released claims "which [she] had, now have or may in the future claim to have, by reason of any act, matter, thing or cause whatsoever on or prior to the date of the Agreement . . . arising out of or relating to [her] tenancy with [Camden], and pursuant to any federal, state, or fair housing laws." Doc. 47-3 at 3. The agreement also provided that:

> [Moore] understands and agrees that she must strictly comply with the terms of the lease agreement and that she must pay all future payments due under the lease timely on or before the due date. [Moore] understands and agrees that [Camden] will reject any payment that is not made on or before the due date as provided in the lease, and a dispossessory action will be filed in order to obtain possession. [Moore] agrees and understands that if a dispossessory action is filed for any future payment that is not made timely that [she] waives her right and forgoes any claim for retaliation or discrimination under the Fair Housing Act.

*Id.* at 4-5.

Nothing in the contract language limited Moore's ability to file future FHA discrimination or retaliation claims. The agreement explicitly limited the scope of the released claims to claims based on circumstances existing "on or prior to" the agreement's execution. As to future behavior, the agreement limited Moore's ability to allege retaliation or discrimination under the FHA only when a

15

dispossessory action was initiated after an untimely rent payment.  This language directly contradicts Moore's conclusory allegations.  *See* Appellant Br. at 35-36; *see also Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").  Thus, the settlement agreement does not clear the high hurdle for declaring a contract contrary to public policy; therefore, Moore's allegations fail to establish that the second agreement was unenforceable.  Accordingly, the district court did not err in dismissing Count V.

## C.    Moore Released All Claims Arising Before the Execution of the Settlement Agreement (Parts of Counts I, VI, and VIII and All of Count VII).

Because the second agreement was enforceable, we must consider whether Moore released in it any claims in the First Amended Complaint.  The release language in the settlement agreement is broad, providing that:

> [Moore] does hereby irrevocably and unconditionally release and discharge forever Camden Summit Partnership LP d/b/a Camden Vantage Apartments and all named Respondents to the Fair Housing Complaint, together with the owners, management company, all employees, agents and successors from any and all actions or causes of action, suits, proceedings whether civil, (administrative or otherwise),

16

debts, employment claims, sums of money,  accounts, contracts, controversies, promises, damages, judgments, executions, liabilities, claims, demands, costs or expenses of any kind or nature whatsoever . . . which they had, now have, or may in the future claim to have, by reason of any act, matter, thing or cause whatsoever on or prior to the date of this Agreement, including but  not limited to any such claims arising out of or relating to the Residents' tenancy with the landlord, and pursuant to any federal, state, or fair housing laws . . . and any claim arising from or related to in any manner to the landlord/tenant relationship.

Doc. 47-3 at 2-3.

Based on this language, we conclude that Moore released all claims that arose before the settlement agreement's execution.  In Count I, Moore alleged that Camden's actions, as detailed above, constituted discrimination in violation of 42 U.S.C. § 3604(b) and interference with the rights of person "granted or protected by section 3604."  Doc. 3 at 16.  Most of Moore's allegations in this count center on alleged wrongdoing related to the October dispossessory action, which predated the settlement agreement.  Thus, to the extent that Count I is based on events occurring before December 2016, it is barred by the settlement agreement.

In Count VI, Moore asserted an abusive litigation claim, alleging that that FHCW and Camden "instituted the May 2016, the October 2016, and the May 2017 dispossessory actions with malice and without substantial justification."  Doc. 3 at 21.  The May 2016 and October 2016 dispossessory actions occurred before the settlement agreement was executed in December 2016 and unmistakably relate to the landlord/tenant relationship between Camden and Moore.  Thus,

17

Moore's allegations about those actions cannot support a claim for abusive litigation because she released them in the settlement agreement.

As to Count VII, Moore alleged that around January 2016 and May or June 2016, Camden's manager entered Moore's apartment to talk and refused to leave after Moore made a maintenance request.  All conduct that gave rise to this claim happened before the execution of the settlement agreement and is therefore released.

In Count VIII, Moore brought an intentional infliction of emotional distress claim, alleging that the defendants' conduct caused her severe emotional distress.  Like most of Moore's claims, much of this claim is based on actions that occurred before the settlement agreement's execution.  Thus, to the extent that this claim rests on these prior actions, it has been released.

Thus, Count VII was wholly released, and to the extent that Counts I, VI, VIII are based on events occurring before December 2016, Moore released these claims as well.

## D.    Collateral Estoppel Bars Count IV.

In Count IV, Moore sought a declaration that Camden's non-renewal and termination of her lease were invalid.  Camden contends that the May 2017

18

dispossessory action previously litigated this issue. In Georgia,[8] the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits when: (1) there is an identity of parties or their privies; (2) there was a previous determination of the same or similar issues in a prior court with competent jurisdiction; and (3) the relevant issue was litigated or by necessity had to be decided for the judgment to be rendered. *See Shields v. BellSouth Advertising & Publishing Corp.*, 545 S.E.2d 898, 900-01 (Ga. 2001).

In Count IV, Moore sought a declaration that Camden's decision not to renew her lease was retaliatory in violation of the FHA and that she is "entitled to enjoy the leased premised until her new lease expires." Doc. 3 at 18. In the May 2017 dispossessory action, Moore asserted a compulsory counterclaim for discrimination and retaliation by Camden in violation of the FHA.

Moore argues that the May 2017 dispossessory action was not between the same parties. This argument is without merit because collateral estoppel is not limited to the same parties. It instead requires either the same parties *or their privies*. A privy is "one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to

---

[8] Federal courts considering whether to give preclusive effect to state court judgments must apply the state's law of collateral estoppel. *Migra v. Warren City School Dist.*, 465 U.S. 75, 81 (1984).

19

the judgment represented the same legal right." *Brown & Williamson Tobacco Corp. v. Gault*, 627 S.E.2d 549, 551 (Ga. 2006).

Moore asserted Count IV against Camden Property Trust and Camden Vantage, LLC. As acknowledged in her complaint, Camden Property Trust is the parent company of Camden Vantage, LLC, the operator of the apartment complex. *See* Doc. 3 at 4. Camden Summit Partnership brought the May 2017 dispossessory action against Moore. Although its exact connections to Camden Property Trust and Camden Vantage, LLC are not evident on this record, the alleged actions of these three entities established that an "identity of interest" existed with respect to whether the non-renewal and termination of Moore's lease were proper. Thus, Camden Property Trust and Camden Vantage, LLC were privies to Camden Summit Partnership, and "the identity of the parties or their privies" requirement of collateral estoppel is satisfied.

The court's decision in the May 2017 dispossessory action also met the requirement of a previous determination of the same or similar issues in a prior court of competent jurisdiction. In entering judgment against Moore, the magistrate court rejected Moore's counterclaim by noting that "[Camden] properly non-renewed [Moore's] lease." Doc. 47-9 at 2. Although the court did not detail its reasoning, it necessarily follows that it rejected Moore's counterclaim in entering its judgment. Thus, Moore was collaterally estopped from seeking a

declaration inconsistent with this conclusion, and the district court correctly dismissed Count IV.[9]

Moore contends that because she was seeking equitable relief, the magistrate court was not a court of competent jurisdiction. *See* Ga. Const. art. VI, § 1, ¶ IV ("[O]nly the superior and appellate courts and state-wide business court shall have the power to issue process in the nature of mandamus, prohibition, specific performance, quo warranto, and injunction."). But Moore's only reference to equitable relief is a general assertion in her complaint that she "brings this civil action for declaratory and injunctive relief and monetary damages." Doc. 3 at 1. Moore did not seek any specific equitable relief in Count IV; instead she merely sought a declaration that Camden's non-renewal and termination of her lease were improper. Accordingly, the magistrate court was a court of competent jurisdiction to adjudicate the issue.

## E.  Moore Failed to State a Claim on Which Relief Could Be Granted for the Remaining Claims.

### 1.  Interference with Fair Housing Complainant's Exercise of Rights (Count III)

In Count III, Moore alleged that FHCW interfered with her fair housing rights under § 3604 of the FHA in violation of § 3617. The only specific

---

[9] To the extent that Count I is based on the May 2017 dispossessory action, it was properly dismissed for the same reasons.

allegations against FHCW concern the letter it sent informing HUD of the signed settlement agreement. Moore alleged that she did not consent to dismissing the HUD Complaint and that FHCW knew that she did not intend to dismiss the complaint. We assume it was this letter that Moore contends interfered with her rights.

A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed "any right granted or protected by" Sections 3603-3606; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct. 42 U.S.C. § 3617; *see also* Quid Pro Quo and Hostile Environment Harassment and Liability for Discriminatory Housing Practices Under the Fair Housing Act, 81 Fed. Reg. 63054, 63059 (Sept. 14, 2016). Moore's interference claim fails because FHCW's conduct does not constitute the requisite interference.

Here, FHCW submitted the settlement agreement to HUD, which contained a release of the claims contained in the HUD Complaint. The agreement also contained a provision in which Moore agreed to withdraw the HUD Complaint and "not to litigate, file a lawsuit or pursue an claim against [Camden], arising out of any of the facts contained in the [HUD Complaint]." Doc. 46-3 at 4. In signing the settlement agreement, Moore effectively forfeited her ability to pursue any

remedies as to the specific alleged misconduct captured in the HUD Complaint. Thus, FHCW sending a letter informing HUD of the agreement cannot constitute interference with FHA rights. Accordingly, the district court did not err when it dismissed Count III.

### 2.    Abusive Litigation (Count VI)

In asserting her abusive litigation claim (Count VI), Moore alleged that FHCW and Camden "instituted the May 2016, the October 2016, and the May 2017 dispossessory actions with malice and without substantial justification." Doc. 3 at 21. As discussed above, to the extent this claim was based on allegations of events occurring before December 2016, Moore released it. So, we focus on actions that allegedly occurred after the execution of the release—here, only actions related to the May 2017 dispossessory action.

Moore's abusive litigation claim fails because Camden, as represented by FHCW, was successful in the May 2017 dispossessory action. "It shall be a complete defense to any claim for abusive litigation that the person against whom a claim of abusive litigation is asserted was substantially successful on the issue forming the basis for the claim of abusive litigation in the underlying civil proceeding." OCGA § 51-7-82 (c). Thus, Moore cannot state a claim for abusive litigation, and the district court did not err in dismissing the claim.

### 3.    Intentional Infliction of Emotional Distress (Count VIII)

In Count VIII, Moore asserted a claim for intentional infliction of emotional distress, alleging that FHCW and Camden "caused [her] severe emotional distress" by (1) "retaliating against [her] for exercising her right to speech," (2) "continually telling [her] to move because of her race and familial status," (3) "filing the dispossessory actions," (4) "requiring [her] to move with less than thirty days notice during the holiday season," (5) "not providing [her] with the requisite notice regarding her lease non-renewal," (6) "inducing [her] nonappearance causing a default to be entered" in the October dispossessory action, and (7) "seeking a writ of possession of [her] apartment," and (8) "sending over $4,500.00 of [her] funds through regular mail during the holiday season." Doc. 3 at 23. Under Georgia law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. A plaintiff asserting this claim must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowers v. Estep*, 420 S.E.2d 336, 339 (Ga. Ct. App. 1992). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of

24

law." *Frank v. Fleet Finance, Inc. of Ga.*, 518 S.E.2d 717, 720 (Ga. Ct. App. 1999).

Here, the alleged actions do not amount to extreme and outrageous conduct. Camden's and FHCW's alleged conduct did not "go beyond all possible bounds of decency." *Bowers*, 420 S.E.2d at 339. Thus, the district court correctly dismissed this claim.

## IV.    CONCLUSION

For the above reasons,[10] we affirm the district court's grant of FHCW's and Camden's motions to dismiss.

**AFFIRMED.**

---

[10] We did not address several of Moore's arguments in this opinion because they lack merit and she raised them for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

25