[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11325
Non-Argument Calendar

_____

D.C. Docket No. 3:16-cv-00193-TCB

RITA MEEKS,

Plaintiff-Appellant,

versus

ROBERT LYNN NEWCOMB,
CELADON TRUCKING,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 16, 2020)

Before WILLIAM PRYOR, Chief Judge, MARTIN and ROSENBAUM, Circuit
Judges.

PER CURIAM:

Rita Meeks appeals the denial of her motion to enforce a settlement agreement. Meeks, Robert Lynn Newcomb, and Celadon Trucking executed a settlement agreement under which Meeks agreed to dismiss the claims of the Estate of Alan Hembree against Newcomb and Celadon in exchange for their promise to pay $100,000. When Meeks later learned that Celadon declared bankruptcy, she moved to enforce the settlement agreement against Newcomb. Because the settlement agreement plainly binds Newcomb and Celadon to pay $100,000, without qualification as to how much each must pay, it was an abuse of discretion for the district court to deny Meeks's motion. We reverse the denial of Meeks's motion, vacate the dismissal of her action, and remand for further proceedings.

## I. BACKGROUND

Meeks, in her capacity as Administrator and surviving heir of Hembree, sued following a car accident in 2012, wherein Hembree died after crashing into the back of a Celadon tractor-trailer driven by employee Newcomb. Meeks sued Newcomb and Celadon individually. That is, Meeks sued Newcomb for his allegedly negligent actions and sued Celadon for the allegedly negligent actions of an employee in the course of business. The parties mediated their claims and eventually entered into a settlement agreement, whereby Meeks released her claims against Newcomb and Celadon in exchange for $100,000. Although sued individually, Newcomb and

2

Celadon shared a single attorney at all times pertaining to this suit. And neither Newcomb nor a Celadon corporate representative appeared at the mediation negotiations. Instead, their shared attorney executed the agreement.

A couple months after the parties executed their agreement, Meeks had yet to receive payment. So she moved for enforcement of the settlement agreement. In her motion, she explained that Newcomb and Celadon together agreed to pay her a total of $100,000 in exchange for the release of the claims against them, so she requested the district court enter judgment against both defendants for that amount. Meeks, upon learning that Celadon had just filed for bankruptcy and that claims against it were stayed, amended her motion the following day to request that judgment be entered only as to Newcomb.

The district court denied Meeks's motion. It accepted Newcomb's request that it look at emails exchanged *after* the execution of the settlement agreement. It concluded that these exchanges reflected the parties' intention to bind only Celadon to paying any amount of money. And, to some extent, the district court appears to have also looked at the parties' understanding before execution of the settlement agreement.

## II. STANDARD OF REVIEW

We review a decision whether to enforce a settlement agreement for an abuse of discretion, with an error of law constituting an abuse of discretion.

3

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1153 (11th Cir. 2019). But we review *de novo* the interpretation of that agreement. *Id.*

### III. DISCUSSION

The Georgia law of contracts governs our analysis of how to construe the parties' settlement agreement. *Ins. Concepts, Inc. v. W. Life Ins. Co.*, 639 F.2d 1108, 1111–12 (5th Cir. 1981). "Where the language of a [settlement agreement] is definite and unambiguous, [it] will be enforced according to its terms." *Id.* at 1112. Whether an ambiguity exists "is a question of law to be resolved by the court." *Id.* If no ambiguity exists, then there is no "need to resort to surrounding circumstances to construe the meaning of the agreement." *Id.*; *cf. H&E Innovation, LLC v. Shinhan Bank Am., Inc.*, 808 S.E.2d 258, 263–64 (Ga. Ct. App. 2017) (reviewing "emails that followed the [execution] of the [s]ettlement" as "additional parol evidence" only after concluding that the agreement contained an ambiguity). To be clear, although "[t]he cardinal rule of construction is to determine the intention of the parties," Georgia courts "look to the contract alone to find the intention of the parties" when "the terms of a written contract are clear and unambiguous." *Safe Shield Workwear, LLC v. Shubee, Inc.*, 675 S.E.2d 249, 252 (Ga. Ct. App. 2009) (internal quotation marks omitted); *see also Atlanta Dev. Auth. v. Clark Atlanta Univ., Inc.*, 784 S.E.2d 353, 358 (Ga. 2016).

4

The terms of the settlement agreement here contain no ambiguity. The settlement agreement binds Meeks to release all claims against Newcomb and Celadon in exchange for $100,000:

> The Plaintiff(s) Rita Meeks, Individually and as Administratrix of the Estate of Alan Hembree[,] has/have agreed to accept, and the Defendants Robert Lynn Newcomb and Celadon Trucking Services has/have agreed to pay the sum of one hundred thousand dollars ($100,000)[.]
>
> Terms: Dismissal with Prejudice . . .
>
> This memorandum contains all the <u>essential elements</u> of the terms and conditions of the settlement in this case.

So Newcomb was a listed party who agreed to pay Meeks $100,000 for the release of her claims against him. Although the agreement does not specify how much of the $100,000 each would pay to Meeks, it plainly binds both Celadon and Newcomb to ensure payment of $100,000. Newcomb cannot escape that result now that his co-obligor has declared bankruptcy. Because the terms of the settlement agreement are unambiguous, the district court was required to enforce the agreement as written. It erred by reviewing extrinsic evidence to establish intent. *See Ins. Concepts*, 639 F.2d at 1111–12; *Atlanta Dev. Auth.*, 784 S.E.2d at 358 (Ga. 2016); *Safe Shield*, 675 S.E.2d at 252.

To the extent Newcomb argues that his attorney lacked even the apparent authority to bind him to this agreement, we are unpersuaded. Georgia law accepts "[a]n attorney of record [as a] client's agent," such that "an act of an agent within

5

the scope of his apparent authority binds the principal." *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) (alteration accepted) (internal quotation marks omitted). And Georgia considers an attorney's authority to be "plenary unless it is limited by the client and that limitation is communicated to opposing parties." *Id.* So a client will be "bound by his attorney's agreement to settle a lawsuit, even though the attorney may not have had express authority to settle, if the opposing party was unaware of any limitation on the attorney's apparent authority." *Id.* (internal quotation marks omitted); *see also Ford v. Citizens & S. Nat. Bank, Cartersville*, 928 F.2d 1118, 1120–21 (11th Cir. 1991) (explaining the same). Newcomb points to no evidence that establishes that his attorney actually had no authority to bind him to a settlement agreement, let alone any evidence that suggests Meeks should have been aware that Newcomb had so limited his attorney's authority. *Cf. Omni Builders Risk, Inc. v. Bennett*, 721 S.E.2d 563, 565–66 (Ga. Ct. App. 2011) (concluding that an attorney lacked apparent authority to bind a company when he signed the attorney's blank but the corporate representative, who was present during negotiations, did not sign the blank explicitly reserved for his signature).

Tellingly, Newcomb is careful not to argue that the settlement agreement is null and void in its entirety as to him—that is, he does not contend that he and Meeks never agreed to dismiss the claims against him. Instead, he tries to smuggle

6

in the extrinsic evidence we could not consider to interpret the settlement agreement to argue that Meeks knew that Celadon and Newcomb had some understanding as to who would pay the settlement sum. But that Meeks may have generally known of an understanding does not suggest that Meeks knew that their joint attorney had no authority to bind Newcomb to a settlement agreement. It would be error to slice the attorney's apparent authority so finely without a clear communication of that limitation. *See id.* at 565 ("[F]rom the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client . . . .").

## IV. CONCLUSION

We **REVERSE** the denial of Meeks's motion to enforce the settlement agreement, **VACATE** the dismissal of the action, and **REMAND** for further proceedings consistent with this opinion.